# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| **PLUM CREEK TIMBERLANDS, L.P.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **YELLOW POPLAR LUMBER COMPANY, INC.,** | ) |
| **ET AL.** | ) |
| | ) |
| **ADDITIONAL DEFENDANTS:** | ) |
| | ) |
| **EQT PRODUCTION NORA, LLC, a Delaware** | ) |
| **Limited Liability Company** | ) |
| | ) |
| **SERVE:   CT Corporation System** | ) |
| **4701 Cox Road, Suite 301** | ) |
| **Glen Allen, VA 23060-6802** | ) |
| | ) |
| **COMMONWEALTH OF VIRGINIA,** | ) |
| **DEPARTMENT OF MINES, MINERALS AND** | ) |
| **ENERGY, DIVISION OF GAS AND OIL** | )   **Case No. 1:13cv00062** |
| | ) |
| **SERVE:   Conrad Spangler, Director** | ) |
| **1100 Bank Street** | ) |
| **Washington Building, 8th Floor** | ) |
| **Richmond, VA  23219** | ) |
| | ) |
| **CONRAD SPANGLER, in his official capacity as** | ) |
| **Director, Virginia Department of Mines, Minerals** | ) |
| **and Energy** | ) |
| | ) |
| **SERVE:   Conrad Spangler, Director** | ) |
| **1100 Bank Street** | ) |
| **Washington Building, 8th Floor** | ) |
| **Richmond, VA  23219** | ) |
| | ) |
| **VIRGINIA GAS AND OIL BOARD** | ) |
| | ) |
| **SERVE:   Bradley C. Lambert, Chairman** | ) |
| **Virginia Gas and Oil Board** | ) |
| **135 Highland Drive** | ) |
| **Lebanon, Virginia  24266** | ) |

*{#1684293-1, 113770-00001-01}*

**BRADLEY C. LAMBERT, in his official capacity as**                  )
**Chairman, Virginia Gas and Oil Board**                              )
                                                                      )
      **SERVE:**     **Bradley C. Lambert, Chairman**    )
                  **Virginia Gas and Oil Board**    )
                  **135 Highland Drive**    )
                  **Lebanon, Virginia  24266**    )
                                                                      )
**LEVISA COAL COMPANY, a**                                            )
**Virginia Limited Partnership and LLP**                              )
                                                                      )
      **SERVE:**     **Benjamin A. Street**    )
                  **Registered Agent**    )
                  **1131 Plaza Drive**    )
                  **P.O. Box 2100**    )
                  **Grundy, VA  24614**    )
                                                                      )
**MGM METHANE CORPORATION,**                                          )
**a Virginia Corporation**                                            )
                                                                      )
      **SERVE:  Michael McGlothlin**                               )
                  **Registered Agent**    )
                  **20445 Riverside Drive**    )
                  **Grundy, VA  24614**    )
                                                                      )
**WAR FORK COAL PARTNERSHIP,**                                        )
**a Virginia Partnership**                                            )
                                                                      )
      **SERVE:**     **John C. Irvin**    )
                  **Managing Partner**    )
                  **4710 Hunterwood Circle**    )
                  **Richmond TX 77469**    )
                                                                      )
**FAIRVIEW LIMITED PARTNERSHIP,**                                     )
**a Virginia Partnership**                                            )
                                                                      )
      **SERVE:**     **Patrick R. Johnson**    )
                  **Registered Agent**    )
                  **1366 Fairview Street**    )
                  **Grundy, VA  24614**    )
                                                                      )
**CNX GAS COMPANY, LLC, a**                                           )
**Virginia Limited Liability Company**                                )
                                                                      )
      **SERVE:**     **CT Corporation System**    )
                  **4701 Cox Road, Suite 285**    )

2

|                                                         |     |
| ------------------------------------------------------- | --- |
| **Glen Allen, VA  23060**                               | )   |
|                                                         | )   |
| **JOHN C. IRVIN**                                       | )   |
| **4710 Hunterwood Circle**                              | )   |
| **Richmond TX 77469**                                   | )   |
|                                                         | )   |
| **CAROL C. IRVIN**                                      | )   |
| **4710 Hunterwood Circle**                              | )   |
| **Richmond TX 77469**                                   | )   |
|                                                         | )   |
| **MARTHA E. COMBS**                                     | )   |
| **310 Bradley Street**                                  | )   |
| **Abingdon, VA  24210**                                 | )   |
|                                                         | )   |
| **JOHN W. POBST, JR.**                                  | )   |
| **24 Woodland Drive**                                   | )   |
| **Upper Black Eddy, PA  18972**                         | )   |
|                                                         | )   |
| **AMY COMBS, Trustee,**                                 | )   |
| **F.H. Combs Testamentary Trust**                       | )   |
| **125 Combs Court**                                     | )   |
| **Tazewell, VA  24651-4501**                            | )   |
|                                                         | )   |
| **ERIC COMBS, Trustee,**                                | )   |
| **F.H. Combs Testamentary Trust**                       | )   |
| **125 Combs Court**                                     | )   |
| **Tazewell, VA  24651-4501**                            | )   |
|                                                         | )   |
| **VIRGINIA LINWICK**                                    | )   |
| **4325 South Ball Drive**                               | )   |
| **Veradale, WA  99037**                                 | )   |
|                                                         | )   |
| **PHILLIP G. LINWICK**                                  | )   |
| **4324 South Ball Drive**                               | )   |
| **Veradale, WA 99037**                                  | )   |
|                                                         | )   |
| **RICHARD K. POBST**                                    | )   |
| **1024 Oxford Dr.**                                     | )   |
| **St. Augustine, FL  32084**                            | )   |
|                                                         | )   |
| **CATHERINE POBST**                                     | )   |
| **111 Postelle St**                                     | )   |
| **Cartersville, GA 30120**                              | )   |
|                                                         | )   |
| **MEREDITH E. JENNINGS**                                | )   |
| **542 Butler Mill Rd.**                                 | )   |
| **Maryville, TN 37803**                                 | )   |

3

{#1684293-1, 113770-00001-01}

|  |  |
|---|---|
| **HURLEY RATLIFF**<br>**1058 Willie Rd**<br>**Vansant, VA  24656** | ) <br> ) <br> ) <br> ) |
| **JOSEPH DEWAYNE TILLER**<br>**1196 Mahagony Rd**<br>**Honaker, VA 24260** | ) <br> ) <br> ) <br> ) |
| **FATE GAINS COMPTON**<br>**251 Decatur Rd**<br>**Stafford, VA  22554** | ) <br> ) <br> ) <br> ) |
| **PATRICIA COMPTON**<br>**8240 Beatrice St**<br>**Westland, MI 48185** | ) <br> ) <br> ) <br> ) |
|                               **Defendants.** | ) |

### SECOND AMENDED COMPLAINT FOR
### DECLARATORY RELIEF AND DAMAGES

Plaintiff Plum Creek Timberlands, L.P. ("Plum Creek"), by counsel, files this Second

Amended Complaint for Declaratory Relief and Damages, and in support thereof states as

follows:

### NATURE OF SUIT

1.       This is an action seeking declaratory relief pursuant to 28 U.S.C. §  2201, et seq.,

and to quiet and remove clouds on title and to establish title to real property owned by Plum

Creek located in Buchanan County, Virginia, to resolve conflicting claims to coalbed methane

under Va. Code § 45.1-361.22, to declare void certain pooling orders of the Virginia Gas and Oil

Board ("VGOB"), and to recover damages.  Specifically, Plum Creek asserts that it is the

successor in title to surface and gas rights in "all of the tracts, pieces or parcels of land, or

interests in land owned by Yellow Poplar Lumber Company (hereafter "Yellow Poplar") on the

watersheds of Levisa River and Dismal Creek and their tributaries in said Buchanan County,

Virginia . . ." which were conveyed under a certain deed dated September 21, 1929, between

4

Gallie Friend, Trustee of the Bankruptcy Estate of Yellow Poplar and W.M. Ritter Lumber Company, Deed Book 64, Page 473, recorded in the Clerk's Office of the Circuit Court of Buchanan County, Virginia (hereafter, the "Gallie Friend Deed"). A copy of the Gallie Friend Deed is attached hereto and incorporated herein as **Exhibit A**.

2. EQT Production Company ("EQT Production") has filed applications with VGOB to force pool gas interests, including coalbed methane gas ("CBM"), of Yellow Poplar, as an unknown owner, in numerous gas wells/drilling units located within Yellow Poplar's boundary. In doing so, EQT Production misrepresented, under oath, that Defendant Range Resources – Pine Mountain, Inc. (and its predecessor) (collectively, "Range Resources"), a coal estate only owner, is a conflicting claimant to CBM in the Yellow Poplar drilling units. EQT Production further misrepresented itself as a gas owner in those drilling units by virtue of leases in its favor from Range Resources. Moreover, EQT Production failed to give proper statutory notice of hearings on the applications for the VGOB pooling orders. In addition, VGOB's grant of pooling orders and permits under the guise of the Virginia Gas and Oil Act, Va. Code § 45.1-361.1 *et. seq.*, (hereafter, "Gas Act") in favor of EQT Production purporting to allow a private party like EQT Production to "pool," develop, produce and keep seven-eighths of gas owned by the Yellow Poplar unknown, effecting a forfeiture of the unknown's property rights to another private party, who otherwise has no property interest in the gas, after inadequate notice and no opportunity to elect, indicates that the Act is unconstitutional as applied in this instance. Consequently, certain VGOB orders relating to Yellow Poplar property rights are void *ab initio*, and EQT is answerable in damages for the substantial quantities of CBM it has produced and sold attributable to Yellow Poplar/Plum Creek's interests. In those instances where the Yellow Poplar unknown's gas rights may have been properly pooled, EQT, as operator, has not properly

5

accounted for and escrowed the proceeds from CBM attributable those interests as required by law.

3.      Among other things, this suit requests the following relief:

(a)      That the Court interpret the Gallie Friend Deed and declare that Yellow Poplar's surface and gas rights in the watershed described therein were conveyed to W.M. Ritter;

(b)      That the Court declare Plum Creek the successor in title of W.M. Ritter in and to such rights;

(c)      That the Court declare Plum Creek the successor in title and sole and exclusive owner to gas rights currently pooled under or otherwise the subject of numerous VGOB Orders and identified under the owner "Gallie Friend, Trustee," "Yellow Poplar Lumber Company, Owner Unknown," or similar designation (hereafter, "Yellow Poplar, Unknown"), and identified under the name of  a C. G. Jackson Record Owner (or a predecessor) (as referenced below);

(d)       That the Court declare null, void and of no effect an Instrument dated October 16, 1930, recorded in the Clerk's Office of the Circuit Court of Buchanan County, Virginia, in Deed Book 65, Page 593, a copy of which is attached hereto and incorporated herein as **Exhibit B,** by which Gallie Friend, Trustee of the Estate of Yellow Poplar, Bankrupt, purported to convey 1,000 acres, more or less, owned by Yellow Poplar and situate in the watersheds of Levisa River and Dismal Creek and their tributaries in Buchanan County, Virginia, to C. G.  Jackson (hereafter "C. G. Jackson Deed"), and declare null, void and of no effect all mesne conveyances thereafter ending

{#1684293-1, 113770-00001-01}

in purported record title in certain defendants as more fully described herein, as well as all leases, split agreements and other Instruments associated therewith;

(e)    That the Court declare void and unenforceable certain VGOB Orders purporting to pool Plum Creek gas rights for failure to comply with statutory and regulatory requirements, for failure to afford due process and/or on the grounds that the Gas Act, as applied, violates Plum Creek's rights under the Constitutions of the United States and Virginia;

(f)    That the Court resolve in Plum Creek's favor all allegedly conflicting claims to CBM asserted by EQT Production as reflected in applications and valid VGOB orders, that the Court order EQT to account for all CBM produced and sold attributable to Plum Creek's interests, and that the Court order all monies escrowed in connection with valid VGOB orders be released and paid to Plum Creek; and

(g)    That Plum Creek be awarded compensatory and exemplary damages for trespass, conversion, unjust enrichment, and breach of fiduciary duties in connection with CBM proceeds not properly escrowed and CBM attributable to Plum Creek's interests produced and sold by EQT without authority under law.

## PARTIES

4.    Plaintiff Plum Creek is a limited partnership organized under the laws of the State of Delaware with its principal place of business in Seattle, Washington.  It is engaged in the business of a real estate investment trust and owns, leases and/or manages natural resources, including minerals, throughout the United States, including Virginia.

5.    Defendant Yellow Poplar was a corporation organized under the laws of the State of Illinois, with its principal place of business at the time in Pickens, South Carolina.  By Decree

7

dated November 7, 1928 the United States District Court for the Western District of South

Carolina adjudged Yellow Poplar a bankrupt and its estate was liquidated.  Consequently Yellow

Poplar is a defunct corporation.  Yellow Poplar and its unknown successors in title, assigns,

shareholders, and creditors, referred to as "Parties Unknown," are named as defendants herein

because Plum Creek claims that it is the exclusive successor in title to certain surface and gas

rights in tracts of land located in Buchanan County, Virginia which are known to have been

owned by Yellow Poplar in or about 1929 as more fully described herein.

      6.      The following Defendants have been named as interested parties herein because

they are the purported record owners of certain rights in real property which is a portion of the

1,000 acres originally the subject of the C. G. Jackson Deed.  Plaintiff asserts that the C. G.

Jackson Deed, and all mesne conveyances resulting in record title in each of the following

defendants, are null, void and of no effect:

        (a)      Defendant Edwin F. Lagard, Jr., believed to be a resident of the New

Canaan, Connecticut, is the purported record owner of surface and gas rights in an

undivided one-third interest in 588.24 acres located in Buchanan County, Virginia, which

is a portion of the acreage/interest conveyed by the C. G. Jackson Deed.   Edwin F.

Lagard, Jr. is a successor to a record claimant to CBM rights in certain Drilling

Units/Wells to which Plum Creek is a successor in interest.

        (b)      Defendant Elizabeth Anne Cox, Trustee of the Elizabeth Anne Cox Trust,

believed to be a resident of Hartford, Connecticut, is the record fiduciary owner of

surface and gas rights in an undivided one-third interest in 588.24 acres located in

Buchanan County, Virginia, which is a portion of the acreage/interest conveyed by the C.

G. Jackson Deed.  Elizabeth Anne Cox, Trustee  is a successor to a record claimant to

{#1684293-1, 113770-00001-01}

CBM rights in certain Drilling Units/Wells to which Plum Creek is a successor in interest.

(c)     Defendant William B. Baker, Jr., the sole surviving Trustee of the Emily P. Baker Generation Skipping Trust, believed to be a resident of Damascus, Oregon, is the record fiduciary owner of surface and gas rights in an undivided one-third interest in 588.24 acres located in Buchanan County, Virginia, which is a portion of the acreage/interest conveyed by the C. G. Jackson Deed.  William B. Baker, Jr., Trustee is a successor to a record claimant to CBM rights in certain Drilling Units/Wells to which Plum Creek is a successor in interest.

(d)     Defendant Charles Bartlett, M.D. is a lessee of certain gas rights in 588.24 acres located in Buchanan County, Virginia, which is a portion of the acreage/interest conveyed by the C. G. Jackson Deed.  As such Defendant Charles Bartlett, M.D. is identified as a lessee in certain VGOB Drilling Units/Wells pooled in the name of William G. Baker (or his successors), is an interested party and is named a defendant herein.

(e)     Defendant Chesapeake Appalachia, LLC, an Oklahoma limited liability company, is a lessee of certain gas rights in 588.24 acres located in Buchanan County, Virginia, which is a portion of the acreage/interest conveyed by the C. G. Jackson Deed. As such Defendant Chesapeake Appalachia, LLC is identified as a lessee in certain VGOB Drilling Units/Wells pooled in the name of William G. Baker (or his successors), is an interested party and is named a defendant herein.  In addition, Chesapeake Appalachia, LLC is the successor by merger to Columbia Natural Resources, LLC which is identified as a Unit Operator of at least one of the Drilling Units/Wells at issue.

{#1684293-1, 113770-00001-01}

Columbia Natural Resources, LLC is hereinafter referred to as Chesapeake Appalachia, LLC.

(f)      Defendant Lydia V. Newberry, believed to be a resident of Surprise, Arizona, is the purported record owner of gas rights in an undivided interest in 225.6 acres located in Buchanan County, Virginia, which is a portion of the acreage/interest conveyed by the C. G. Jackson Deed.  Lydia Newberry is a successor to a record claimant to CBM rights in certain Drilling Units/Wells to which Plum Creek is a successor in interest.

(g)      Defendant Heartwood Forestland Fund IV Limited Partnership ("Heartwood Forestland Fund") is a North Carolina limited partnership with its principal place of business in Chapel Hill, NC and registered to do business in Virginia.  Defendant Heartwood Forestland Fund is the purported record owner of surface rights in an undivided interest in 225.6 acres located in Buchanan County, Virginia, which is a portion of the acreage/interest conveyed by the C. G. Jackson Deed.

(h)      Defendant Marlene McCall, believed to be a resident of Kingsport, Tennessee, is the purported record owner of surface and gas rights in an undivided one-half interest in 144.8 acres located in Buchanan County, Virginia, which is a portion of the acreage/interest conveyed by the C. G. Jackson Deed.  Marlene McCall  is a successor to a record claimant to CBM rights in certain Drilling Units/Wells to which Plum Creek is a successor in interest.

(i)      Defendant Donna Vest, believed to be a resident of Vinton, Virginia, is the purported record owner of surface and gas rights in an undivided one-half interest in 144.8 acres located in Buchanan County, Virginia, which is a portion of the

{#1684293-1, 113770-00001-01}

acreage/interest conveyed by the C. G. Jackson Deed.  Donna Vest  is a successor to a record claimant to CBM rights in certain Drilling Units/Wells to which Plum Creek is a successor in interest.

(j)      Mary L. McGlothlin, deceased, is the purported record owner of gas rights in an undivided interest in 72.8 acres, surface and gas rights in an undivided one-half interest in 49.01 acres, and surface and gas rights in a 7/9 interest in 74.2 acres, all located in Buchanan County, Virginia, all of which is a portion of the acreage/interest conveyed by the C. G. Jackson Deed.  Upon information and belief, Mary L. McGlothin departed this life intestate on January 1, 2013.  Mrs. McGlothlin left the following heirs who are named as defendants herein as interested parties because they are successors to record claimants to CBM rights in certain Drilling Units/Wells to which Plum Creek is a successor in interest:

(i)      Defendant Donald A. McGlothlin, Jr.;

(ii)      Defendant Mary L. McGlothlin Burton;

(iii)      Defendant Leah Anne McGlothlin; and

(iv)      Defendant Kevin T. McGlothlin.

(k)      Lonzo Coleman, deceased, is the purported record owner of surface and gas rights in a 2/9 interest in 74.2 acres located in Buchanan County, Virginia, which is a portion of the acreage/interest conveyed by the C. G. Jackson Deed.  Upon information and belief, Lonzo Coleman died on or about November 5, 1962, leaving nine heirs, a list of whom is found at Will Book 3, Page 344 of the Clerk's Office of the Circuit Court of Buchanan County, Virginia.  Each of the heirs of Lonzo Coleman purportedly received a 1/9 undivided interest in the 2/9 interest of the tract aforesaid.  These heirs include,

{#1684293-1, 113770-00001-01}

among others, Karen Stiltner and Meda Jane Owens.  Upon information and belief, all

Lonzo Coleman heirs, with the exception of Karen Stiltner and Meda Jane Owens, sold

their interest in the subject parcel to Mary L. McGlothlin.  Karen Stiltner is believed to be

a resident of Galax, Virginia.  Meda Jane Owens departed this life some time prior to

1977, leaving her husband Teddy R. Owens.  It is unknown whether Meda Jane Owens

had any issue or other heirs or descendants.  At some time prior to June 3, 2008, Teddy

R. Owens departed this life.  It is unknown whether Teddy R. Owens had any issue.

Teddy R. Owens left the following living siblings:  Rita C. Coleman of Vansant,

Virginia, Betty Sue Sutherland of Lebanon, Virginia, Ruby Jean Hill of Vansant, Virginia

and Danny Carl Owens of Haysi, Virginia.  Other heirs and descendants of Teddy R.

Owens are referred to herein as "Parties Unknown."  Accordingly, the following are

potentially interested parties and are named defendants herein:

       (i)       Defendant Karen Stiltner;

       (ii)      Defendant Rita C. Coleman;

       (iii)     Defendant Betty Sue Sutherland;

       (iv)     Defendant Ruby Jean Hill;

       (v)      Defendant Danny Carl Owens;

       (vi)     Unknown descendants, heirs, devisees, beneficiaries, and assigns of

Meda J. Owens, referred to as "Parties Unknown;" and

       (vii)    Unknown descendants, heirs, devisees, beneficiaries, and assigns of

Teddy R. Owens, referred to as "Parties Unknown."

    (l)      Defendant Rebecca L. Bowman Rakes, believed to be a resident of

Ferrum, Virginia, is a purported record owner of an undivided interest in surface rights in

*[#1684293-1, 113770-00001-01]*

72.8 acres located in Buchanan County, Virginia, subject to the life estates of Helen M. Bowman and Jerry R. Bowman, both of whom are deceased, which is a portion of the acreage/interest conveyed by the C. G. Jackson Deed.

(m)     Defendant Cindy K. Bowman, believed to be a resident of Vansant, Virginia, is a purported record owner of an undivided interest in surface rights in 72.8 acres located in Buchanan County, Virginia, subject to the life estates of Helen M. Bowman and Jerry R. Bowman, both of whom are deceased, which is a portion of the acreage/interest conveyed by the C. G. Jackson Deed.

(n)     Defendant Matthew Trivett, believed to be a resident of Keyman, Maryland, is the purported record owner of surface and gas rights in an undivided one-half interest in 49.01 acres located in Buchanan County, Virginia, which is a portion of the acreage/interest conveyed by the C. G. Jackson Deed.

(o)     Defendant Michael Trivett, believed to be a resident of Bethesda, Maryland, is the purported record owner of surface and gas rights in an undivided one-half interest in 49.01 acres located in Buchanan County, Virginia, which is a portion of the acreage/interest conveyed by the C. G. Jackson Deed.

(p)     Defendant Jody B. Baldwin, believed to be a resident of Salem, Virginia, is the purported record owner of surface and gas rights in an undivided interest in 18 acres located in Buchanan County, Virginia, which is a portion of the acreage/interest conveyed by the C. G. Jackson Deed.

(q)     Defendant Jessica Baldwin, believed to be a resident of Salem, Virginia, is the purported record owner of surface and gas rights in an undivided interest in 18 acres

{#1684293-1, 113770-00001-01}

located in Buchanan County, Virginia, which is a portion of the acreage/interest conveyed by the C. G. Jackson Deed.

(r)     I. A. Coleman, deceased, was the purported record owner of surface and gas rights in 13.8 acres located in Buchanan County, Virginia, which is a portion of the acreage/interest conveyed by the C. G. Jackson Deed.  I. A. Coleman departed this life prior to November 1982, intestate, leaving the following heirs:  Arthur Coleman, Carmel Coleman, Lena Everman, Stella Coleman, Bonnie Hunt, and Lonzie Coleman.  Lonzie Coleman subsequently departed this life leaving the following heirs:  wife Goldie Coleman York and issue Barbara Charles, Clinton Coleman, Eugene Coleman, Douglas Coleman, Susie Charles, Karen Stiltner and Ira Jessie Coleman.  At the time of his death I. A. Coleman also owned real property adjacent to the 13.8 acres.  After his death, the 13.8 acres and the adjacent property were commingled and the heirs of I. A. Coleman and Lonzie Coleman agreed to divide their interest in this property into seven tracts.  Each heir received one of the seven tracts made up of 12 acres, more or less, and each tract contained a portion of the 13.8 acres, which is a portion of the acreage/interest conveyed by the C. G. Jackson Deed.  Accordingly, the following individuals are interested parties and named defendants herein by virtue of the seven tracts identified below and as more particularly described in the land records of Buchanan County, Virginia:

(i)     Bonnie Hunt is the purported record owner of an undivided interest in surface and gas rights in Tract 1 (Deed Book 295, Page 286);

(ii)     Rita Simmons is the purported record owner of an undivided interest in surface and gas rights in Tract 2 (Instrument No. 060001982);

{#1684293-1, 113770-00001-01}

(iii)    Douglas Coleman is the purported record owner of an undivided one quarter interest in the surface and gas rights in Tract 3 (Deed Book 595, Page 588);

(iv)    Clinton Coleman is the purported record owner of an undivided one-eighth interest in the surface and gas rights in Tract 3 (Deed Book 295, Page 439);

(v)    Eugene Coleman is the purported record owner of an undivided one-eighth interest in the surface and gas rights in Tract 3 (Deed Book 295, Page 439);

(vi)    Barbara Charles is the purported record owner of an undivided one-eighth interest in the surface and gas rights in Tract 3 (Deed Book 295, Page 439);

(vii)    Susie Charles is the purported record owner of an undivided one-eighth interest in the surface and gas rights in Tract 3 (Deed Book 295, Page 439);

(viii)    Ira Jessie Coleman is the purported record owner of an undivided one-eighth interest in the surface and gas rights in Tract 3 (Deed Book 295, Page 439);

(ix)    Karen Stiltner is the purported record owner of an undivided one-eighth interest in the surface and gas rights in Tract 3 (Deed Book 295, Page 439);

(x)    Lena Everman is the purported record owner of an undivided interest in the surface in Tract 4 (Deed Book 303, Page 764);

(xi)    Mary L. Coleman is the purported record owner of an undivided interest in the gas rights in Tract 4 (Deed Book 303, Page 764);

(xii)    Arthur Coleman is the purported record owner of an undivided interest in the gas rights in Tract 4 (Deed Book 303, Page 764).  Upon information and belief, Arthur Coleman departed this life on or about April 13,

15

1985, intestate, with his heirs, descendants and devisees being unknown.  All unknown heirs, descendants, devisees, beneficiaries and assigns of Arthur Coleman, deceased, are interested parties and are made defendants herein as "Parties Unknown;"

(xiii)  Bonnie Hunt is the purported record owner of an undivided interest in the surface in Tract 5 (Deed Book 295, Page 624);

(xiv)  Lena Everman is the purported record owner of an undivided interest in the gas rights in Tract 5 (Deed Book 295, Page 624);

(xv)   Irving Coleman is the purported record owner of an undivided ½ interest in the surface and gas rights in Lot 1 of Tract 6 (Will Book 18, Page 420);

(xvi)  Barbara Ellen Coleman is the purported record owner of an undivided ½ interest in the surface and gas rights in Lot 1 of Tract 6, having acquired that interest by deed of gift from Regina Lynn Lewis dated January 10, 2013 (Instrument No. 130000134);

(xvii) Irving Coleman is the purported record owner of an undivided interest in the surface and gas rights in Lot 2 of Tract 6 (Will Book 18, Page 420);

(xviii) Regina Lynn Lewis is the purported record owner of an undivided interest in the surface and gas rights in Lot 3 of Tract 6 (Deed Book 611, Page 770);

(xix)  Jerry L. Coleman is the purported record owner of an undivided interest in the surface and gas rights in Tract 7 (Deed Book 445, Page 93); and

16

(xx)   Barbara Ann Coleman is the purported record owner of an undivided interest in the surface and gas rights in Tract 7 (Deed Book 445, Page 93).

(s)      Defendant G. W. Charles, address unknown, is the purported record owner of an undivided interest in 26,250 square feet of surface located in Buchanan County, Virginia, which is a portion of the acreage/interest conveyed by the C. G. Jackson Deed (Deed Book 93, Page 323).

(t)      Defendant Phoeba Charles, address unknown, is the purported record owner of an undivided interest in 26,250 square feet of surface located in Buchanan County, Virginia, which is a portion of the acreage/interest conveyed by the C. G. Jackson Deed (Deed Book 93, Page 323).

(u)      It appearing to Plaintiff that Defendants G. W. Charles and Phoeba Charles, husband and wife, are purported record owners based on a deed dated August 28, 1943, that their whereabouts are unknown and that they may have departed this life, the unknown descendants, heirs, devisees, beneficiaries, and assigns of G. W. Charles and Phoeba Charles, referred to as "Parties Unknown" are made defendants herein.

7.      Defendant EQT Production Company f/k/a Equitable Production Company (collectively with EQT Production Nora, LLC, "EQT") is a corporation organized under the laws of the state of Pennsylvania with its principal place of business in Pittsburg, Pennsylvania.  EQT is engaged in the business of the development and production of deep gas and CBM, including the development and operation of gas Drilling Units/Wells, in Buchanan County, Virginia.  EQT is a Unit Operator of certain gas Drilling Units/Wells located in Buchanan County, Virginia which identify as a gas owner Yellow Poplar, Unknown, or a C. G. Jackson Record Owner (or its

{#1684293-1, 113770-00001-01}

predecessor).  EQT is made a defendant herein as it has engaged in the unauthorized production, development and removal of gas owned by Plum Creek, and/or as an interested party as it purports to be the Unit Operator and statutory lessee of gas in these Drilling Units/Wells pursuant to Va. Code §  45.1-361.21 and -361.22.

8.      EQT Production Nora, LLC, ("EQT Nora") is a limited liability company organized under the laws of the state of Delaware with its principal place of business at 625 Liberty Avenue, Suite 1700, Pittsburgh, Pennsylvania  15222.  EQT Nora is engaged in the business of the development and production of deep gas and CBM, including the development and operation of gas Drilling Units/Wells, in Buchanan County, Virginia.  EQT Production Company purportedly transferred certain wells in which Plum Creek claims gas rights to EQT Nora as Unit Operator.  EQT Nora is made a defendant herein as it has engaged in the unauthorized production, development and removal of gas owned by Plum Creek, or, alternatively, as an interested party as it purports to be the Unit Operator and statutory lessee of gas in these Drilling Units/Wells pursuant to Va. Code §  45.1-361.21(D).

9.      Defendant Range Resources – Pine Mountain, Inc. f/k/a Pine Mountain Oil and Gas, Inc. ("Range Resources") is a corporation organized under the laws of the state of Pennsylvania with its principal place of business in Fort Worth, Texas.  Defendant Range Resources is the holder of certain mineral rights and claims to be owner of CBM rights under certain VGOB Orders establishing pooling interests in Drilling Units/Wells in Buchanan County, Virginia, which gas rights are identified in such Orders in the name of Range Resources and Clinchfield Coal Company (predecessor by deed of Range Resources).  Consequently, Range Resources is a current conflicting claimant to CBM rights in certain Drilling Units/Wells to which Plum Creek is a successor in title and interest.  Range Resources also has executed split

18

agreements with one or more of the C. G. Jackson Record Owners which purport to establish the basis for the release of certain escrowed funds and which purport to set forth an agreed division of future royalties.  Range Resources is also a Unit Operator and a statutory lessee of gas in one or more Drilling Units/Wells pursuant to Va. Code § 45.1-361.21(D).

10.    All unknown persons /entities who claim an interest in gas Drilling Units/Wells in the watersheds of Levisa River, Dismal Creek and their tributaries in Buchanan County, Virginia in or through Gallie Friend, Trustee, Estate of Yellow Poplar Lumber Company or similar designation, are potentially interested parties and are made defendants herein as "Parties Unknown." ).

11.    The Commonwealth of Virginia, Department of Mines, Minerals and Energy, Division of Gas and Oil is a named defendant and interested party as this case questions the validity of certain Virginia Gas and Oil Board pooling orders and the constitutionality of certain provisions of the Virginia Gas and Oil Act, Va. Code §§ 45.1-361.1 *et seq.*

12.    Conrad Spangler is a named defendant in his official capacity as Director, Virginia Department of Mines, Minerals and Energy, an agency of the Commonwealth of Virginia.  In that capacity, Spangler is responsible for exercising the powers and performing the duties conferred or imposed on him by law in connection with the administration of the Department, including its Division of Gas and Oil.

13.    The Virginia Gas and Oil Board ("VGOB") is a Board established under the laws of the Commonwealth of Virginia, § 45.1-361.13, and has the powers and duties specified under the Virginia Gas and Oil Act, including administering procedures for the recognition and protection of the rights of gas or oil owners with interests in coalbed methane gas resources contained within a pool, entering pooling orders and establishing practices and procedures before

19

the Board.  This case questions the validity of certain VGOB pooling orders and the
constitutionality of certain provisions of the Virginia Gas and Oil Act, Va. Code §§ 45.1-361.1 et
seq. as applied by VGOB under the circumstances presented.

14.     Bradley C. Lambert is made a defendant in his official capacity as Chairman,
Virginia Gas and Oil Board.

15.     The following additional Defendants have been named as interested parties herein
because they are the purported record owners of certain rights in real property which is the
subject of VGOB pooling orders which also purport to pool the gas interests of  Yellow Poplar,
Unknown, and which pooling orders, for reasons set forth more fully herein, Plum Creek seeks to
have declared void:

(a)     Levisa Coal Company is a Virginia limited partnership and L.L.P. with its
principal office in Richmond, Texas;

(b)     MGM Methane Corporation, a corporation organized under the laws of
Virginia with its principal office in Grundy, Virginia;

(c)     War Fork Coal Partnership, a Virginia partnership with its principal office
in Bristol, Virginia;

(d)     Fairview Limited Partnership, a Virginia partnership with its principal
office in Richmond, Texas;

(e)     CNX Gas Company, LLC, a Virginia limited liability company with its
principal office in Pittsburgh, Pennsylvania;

(f)     John C. Irvin, located at 4710 Hunterwood Circle, Richmond, Texas;

(g)     Carol C. Irvin, located at 4710 Hunterwood Circle, Richmond, Texas;

(h)     Martha E. Combs, located at 310 Bradley Street, Abingdon, Virginia;

20

(i)       John W. Pobst, Jr., located at 24 Woodland Drive, Upper Black Eddy, Pennsylvania;

(j)       Amy Combs, Trustee, F.H. Combs Testamentary Trust, located at 125 Combs Court, Tazewell, Virginia;

(k)       Eric Combs, Trustee, F.H. Combs Testamentary Trust located at125 Combs Court, Tazewell, Virginia;

(l)       Virginia Linwick, located at 4324 South Ball Drive, Veradale, Washington;

(m)      Phillip G. Linwick, located at 4324 South Ball Drive, Veradale, Washington;

(n)       Richard K. Pobst, located at 1024 Oxford Dr., St. Augustine, Florida;

(o)       Catherine Pobst, located at 111 Postelle St. Cartersville, Georgia;

(p)       Meredith E. Jennings, located at 542 Butler Mill Rd., Maryville, Tennessee;

(q)       Hurley Ratliff, located at 1058 Willie Rd. Vansant, Virginia;

(r)       Joseph Dewayne Tiller, located at 1196 Mahagony Rd., Honaker, Virginia;

(s)       Fate Gains Compton, located at 251 Decatur Rd., Stafford, Virginia; and

(t)       Patricia Compton, located at 8240 Beatrice St., Westland, Michigan.

## JURISDICTION AND VENUE

16.       The subject of this Cause involves the issue of rights and damage relating to real property located in Buchanan County, Virginia making venue appropriate in this Court under 28 U.S.C. §  1391(b)(2).  Moreover, this Court has subject matter jurisdiction over this action

21

pursuant to federal question jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution of the United States. This Court also has supplemental jurisdiction over Plaintiff's claims under 28 U.S.C. § 1367.

## BACKGROUND

**A.**      ***The Gallie Friend Conveyance of Yellow Poplar Property***

17.      By deed dated January 5, 1906, recorded in the Clerk's Office of the Circuit Court of Buchanan County, Virginia, in Deed Book 30, Page 226, Excelsior Coal and Lumber Company conveyed fourteen (14) tracts of land to Yellow Poplar Lumber Company. All or a portion of Tracts 1, 2, 7, 8, 9, 10, 11 and 13 were located in Buchanan County, Virginia. Tract 10 conveyed what was described generally as "a tract of land or parcel situate on the waters of the Big Pawpaw and Big Fox Creek in Buchanan County, Virginia, consisting of surface rights only and containing one thousand acres, more or less." A metes and bounds description of Tract 10 also is included in the deed. Tract 11 conveyed certain rights, including all rights and interest to gas, in "a tract of land situate on the waters of the Big Pawpaw and Big Fox Creek in Buchanan County, Virginia consisting of 3,877 and ½ acres, more or less." A metes and bounds description of Tract 11 also is included in the deed.

18.      To clear Yellow Poplar's title to Tracts 10 and 11, Jessee and Emma Beam, by Instrument dated May 16, 1906, recorded in the Clerk's Office of the Circuit Court of Buchanan County, in Deed Book 32, Page 146, quitclaimed all their interest in 3,877 and ½ acres, more or less, which acreage had previously been conveyed to Yellow Poplar by Excelsior Coal and Lumber Company.

19.      By deed of trust dated January 4, 1927, recorded in the Clerk's Office of the Circuit Court of Buchanan County, Virginia, at Trust Deed Book 3, Page 213, Yellow Poplar

{#1684293-1, 113770-00001-01}

granted and conveyed in trust "all of the tracts, peices (sic) or parcels of land, or interests in land owned by [Yellow Poplar] on the watersheds of Levisa River and Dismal Creek and their tributaries in said Buchanan County, Virginia" to Edwin Mann, as Trustee, to secure to W.M. Ritter the payment of a promissory note in the principal sum of $131,678.00.

20.     Upon the Petition of White Oak Lumber Company, by Decree dated November 7, 1928, recorded in the Clerk's Office of the Circuit Court of Buchanan County, Virginia at Deed Book 64, Page 473, Yellow Poplar was declared and adjudged a bankrupt by the United States District Court for the Western District of South Carolina in Case No. B-1101.

21.     Thereafter, on December 3, 1928, the United States District Court for the Western District of South Carolina appointed and duly qualified Gallie Friend as Trustee for the Bankrupt Estate of Yellow Poplar.  Among other things, Yellow Poplar defaulted on the promissory note to W.M. Ritter.

22.     By Decree dated September 13, 1929, recorded in the Clerk's Office of the Circuit Court of Buchanan County, Virginia in Deed Book 64, Page 471, the United States District Court for the Western District of South Carolina authorized and directed Gallie Friend to grant and convey by deed, with covenants of special warranty, to W.M. Ritter, free from all taxes, assessments, liens and encumbrances, all those lands which were the subject of the January 4, 1927 deed of trust in full satisfaction of Yellow Poplar's indebtedness to W.M. Ritter.

23.     Under authorization of the September 13, 1929 Decree, Gallie Friend, Trustee of the Bankrupt Estate of Yellow Poplar, by deed dated September 21, 1929, recorded in the Clerk's Office of the Circuit Court of Buchanan County, Virginia at Deed Book 64, Page 473, attached hereto as **Exhibit A,** conveyed to W.M. Ritter four specific tracts of land containing approximately 4,389.29 acres situate on the watersheds of Levisa River and Dismal Creek, and

{#1684293-1, 113770-00001-01}

their tributaries, in Buchanan County, Virginia, as more particularly described in the deed.  In addition, the deed contained the following language of conveyance:

> It being the intention to embrace herein and convey hereby all of the tracts, pieces or parcels of land, or interests in land owned by Yellow Poplar Lumber Company on the watersheds of Levisa River and Dismal Creek and their tributaries in said Buchanan County, Virginia, whether herein above described, or referred to, or not.

24.     Both Dismal Creek and Russell Fork are tributaries of the Levisa River (also known as Levisa Fork).

25.     The term "watershed" is a scientific term used to refer to an area of land from which rainfall runoff drains to one stream through a network of tributaries.  The term "watershed" may be applied to the drainage area of a very small, short stream and also to larger and longer streams up to the largest rivers of the continent.  A "subwatershed" of a watershed is also a scientific term which refers to the drainage area of a tributary of the main stream and is completely contained within the area of the watershed.

26.     The watersheds of the Levisa River and its tributaries in Buchanan County include the Dismal Creek and Russell Fork subwatersheds.  The Levisa River watershed is graphically depicted in **Exhibit C**, a copy of which is attached hereto and incorporated herein, and consists of the entire southern and western portions of Buchanan County.

27.     Consequently, the Gallie Friend Deed conveyed to W.M. Ritter "all tracts, pieces or parcels of land or interests in land owned by Yellow Poplar" on September 21, 1929, in the area graphically depicted as the Levisa River watershed in Buchanan County, Virginia in **Exhibit C.**

28.     At the time of the deed of trust to Edwin Mann and the Gallie Friend Deed, Yellow Poplar owned Tracts 10 (surface rights in 1,000 acres) and Tract 11 (gas rights in 3,877.5

24

acres) as described in the January 5, 1906 deed from Excelsior Coal and Lumber Company to Yellow Poplar Lumber Company. Tracts 10 and 11 are located in the watershed of Levisa River and its tributaries in Buchanan County, Virginia, and were conveyed to W.M. Ritter by the Gallie Friend Deed.

> **B.** *Plum Creek is Successor in Title to Yellow Poplar Property In Levisa River Watershed Previously Conveyed to W.M. Ritter*

29.     As evidenced by an instrument dated September 30, 1960, recorded in the Clerk's Office of the Circuit Court of Buchanan County, Virginia in Deed Book 145, Page 544, W. M. Ritter merged into Georgia-Pacific Corporation. At the time of the merger, W. M. Ritter owned the Yellow Poplar real property transferred by the Gallie Friend Deed to W. M. Ritter.

30.     By Quit Claim Deed dated April 16, 1999, recorded in the Clerk's Office of the Circuit Court of Buchanan County, Virginia, in Deed Book 500, Page 214, Georgia-Pacific Corporation conveyed to North American Timber Corp. its right, title and interest to all real property, including all right, title and interest to coal, oil, gas, coalbed methane and other minerals of every kind owned by Georgia-Pacific Corporation in Buchanan County, Virginia. At the time of the deed, Georgia-Pacific owned the Yellow Poplar real property transferred by the Gallie Friend Deed to W. M. Ritter.

31.     As evidenced by a Certificate of Merger, recorded in the Clerk's Office of the Circuit Court of Buchanan County, Virginia, dated December 6, 2001, in Deed Book 535, Page 756, North American Timber Corp. merged into and became Plum Creek Timber Company, Inc. effective October 6, 2001. At the time of the merger, North American Timber Corp. owned the Yellow Poplar real property transferred by the Gallie Friend Deed to W. M. Ritter.

32.     By Quitclaim deed dated October 6, 2001, recorded in the Clerk's Office of the Circuit Court of Buchanan County, Virginia, on December 6, 2001, in Deed Book 535, page 777,

*[#1684293-1, 113770-00001-01]*

Plum Creek Timber Company, Inc. conveyed all of its right, title and interest in and to any real property situate in Buchanan County, Virginia, including "gas, CBM and other minerals of every kind and character in or under any and all real property situate in said county" to Plaintiff Plum Creek Timberlands, L.P. At the time of the deed, Plum Creek Timber Company owned the Yellow Poplar real property transferred by the Gallie Friend Deed to W. M. Ritter.

33.    As a result of the foregoing, Plaintiff Plum Creek Timberlands, L.P. is the successor in title to and the sole and exclusive legal and beneficial owner of the Yellow Poplar real property captured by the catchall and situate on the watersheds of Levisa River and Dismal Creek, and their tributaries, in Buchanan County, Virginia as shown in **Exhibit C,** including Tracts 10 and 11, which property was transferred by the Gallie Friend Deed to W. M. Ritter.

**C.    *Conveyance of Yellow Poplar Property in Levisa River Watershed By Gallie Friend and Others After September 21, 1929 Is Null, Void and of No Effect***

34.    By Instrument dated October 16, 1930, recorded at Deed Book 65, Page 593 in Buchanan County, Virginia, Gallie Friend purported to convey to C. G. Jackson the following (with emphasis added):

> All that certain tract or parcel of land, situate, lying and being in Buchanan County, Virginia, on the waters of Big Paw Paw Creek of Russell Fork River, containing one thousand (1,000) acres, more or less, but sold by the boundary and not by the acre, and being the same tract or parcel of land heretofore obtained by the Yellow Poplar Lumber Company, a corporation, from Excelsior Coal and Lumber Corporation, by deed dated January 5, 1905, and recorded in the Clerk's Office of the Circuit Court of Buchanan County, Virginia, in Deed Book ___, page ___, and in the Clerk's Office of the Circuit Court of Dickenson County, Virginia, in Deed Book No. 25, page 476, et seq., **being set out and described in said deed by metes and bounds as Tract No. 10, to which deed special reference is here made for a more particular description of said tract of land.**

35.    The 1,000 acres identified as Tract 10 in the Excelsior Coal and Lumber Company deed to Yellow Poplar purportedly conveyed by Instrument dated October 16, 1930 to C. G. Jackson is situate in the Levisa River watershed as depicted in **Exhibit C**, and was

26

previously conveyed by the Gallie Friend Deed to W. M. Ritter. The Instrument dated October 16, 1930 is therefore null, void and of no effect.

36.     Defendants Edwin F. Lagard, Jr., Elizabeth Anne Cox, Trustee, William B. Baker, Jr., Trustee, Charles Bartlett, M.D., Chesapeake Appalachia, LLC, Lydia V. Newberry, Heartwood Forestland Fund, Marlene McCall, Donna Vest, Donald A. McGlothlin, Jr., Mary L. McGlothlin Burton, Leah Anne McGlothlin and Kevin T. McGlothlin, Karen Stiltner, Rita C. Coleman, Betty Sue Sutherland, Ruby Jean Hill, Danny Carl Owens, Rebecca L. Bowman Rakes, Cindy K. Bowman, Matthew Trivett, Michael Trivett, Jody B. Baldwin, Jessica Baldwin, Bonnie Hunt, Rita Simmons, Douglas Coleman, Clinton Coleman, Eugene Coleman, Barbara Charles, Susie Charles, Ira J. Coleman, Lena Everman,  Mary Coleman, Irving Coleman, Barbara Ellen Coleman, Regina Lynn Lewis, Jerry L. Coleman, Barbara Ann Coleman, G. W. Charles, Phoeba Charles, and Parties Unknown (collectively the "C. G. Jackson Record Owners") are each identified in the land records of Buchanan County, Virginia as claiming rights in some portion of the 1,000 acres through the Instrument dated October 16, 1930, from Gallie Friend to C. G. Jackson which Instrument is null, void and of no effect.  Each of the deeds/leases of these defendants to such property, along with the mesne conveyances in each of their chains of title constitute a cloud on the rightful title of Plum Creek to the 1,000 acres, more or less.

37.     In addition, certain of the Defendants or their predecessors have been identified as being the gas or CBM owner or lessee in certain Drilling Units/Wells established by VGOB Order, as shown in **Exhibit D**, a copy of which is attached hereto and incorporated herein.  These Drilling Units/Wells are located on some portion of the 1,000 acres which purportedly passed to these Defendants through the Instrument dated October 16, 1930, from Gallie Friend to C. G. Jackson. Each of the VGOB Orders identified have been placed among the land records of

Buchanan County, Virginia and constitute a cloud on the rightful title of Plum Creek to the 1,000 acres, more or less.

38.    Additionally, certain of the C.G. Jackson Record Owners have executed split agreements with Range Resources which purport to establish the basis for the release of certain escrowed funds and which purport to set forth an agreed division of future royalties.  These split agreements are null, void and of no effect and constitute a cloud on the title of Plum Creek to the gas interests once owned by Yellow Poplar.

39.    None of the C.G. Jackson Record Owners  have commercially drilled, mined, or otherwise removed gas from the portion of the 1,000 acres they claim herein for a continuous period of fifteen years preceding the date of filing of this Complaint for Declaratory Relief.

40.    Plum Creek is interested only in asserting its rights to the mineral interests in the 1,000 acres, including gas rights.  Plum Creek is willing to quitclaim surface rights to the C. G. Jackson Record Owners (with appropriate reservations and exceptions) at their request.

**D.**    ***Plum Creek is the Owner of Gas Rights in Each Gas Well Located in the Levisa River Watershed In Buchanan County, Virginia Which Identifies the Gas Rights Owner As  "Yellow Poplar, Unknown" As Well As Certain Drilling Units/Wells Pooling Gas From Property Claimed By The C. G Jackson Record Owners; Claims to Gas Rights in These Drilling Units/Wells Which Conflict With Those of Plum Creek Should Be Invalidated.***

41.    VGOB has entered Orders pooling or otherwise identifying the gas interests of various gas owners in Buchanan County, Virginia in order to develop and establish certain Drilling Units/Wells to be operated by EQT, Range Resources and Chesapeake Appalachia, LLC f/k/a Columbia Natural Resources, LLC.

42.    The gas owner of seventy-two (72) of these Drilling Units/Wells are identified as "Gallie Friend, Trustee of the Estate of Yellow Poplar Lumber Company, Unknown" or "Yellow Poplar Lumber Company, Unknown" or some similar designation.  Plaintiff lacks information

{#1684293-1, 113770-00001-01}

with regard to two additional Drilling Units/Wells.[1] Two other Drilling Units/Wells show gas interests in the name of one or more C.G. Jackson Record Owners and no interest by Yellow Poplar Lumber Company.

43.    A complete listing of these Drilling Units/Wells is set out in **Exhibit E**, a copy of which is attached hereto and incorporated herein.

44.    The map attached hereto and incorporated herein as **Exhibit F** identifies the location of each of the Drilling Units/Wells identified in **Exhibit E** as situate on land located in the watershed of Levisa River and its tributaries in Buchanan County, Virginia.

45.    Plum Creek is the actual gas estate owner in each of the Drilling Units/Wells which identify the owner as Yellow Poplar, Unknown, and which are identified in **Exhibit E.**

46.    The Drilling Units/Wells identified in **Exhibit E** were established by VGOB Order upon the application of Defendant EQT, Range Resources or Chesapeake Appalachia, LLC f/k/a Columbia Natural Resources, LLC.  Under such Orders, Defendant EQT, Range Resources and/or Chesapeake Appalachia, LLC is the purported "deemed" lessee of the gas in the Drilling Units/Wells owned by Plum Creek as successor in title to Yellow Poplar.

47.    Upon information and belief, Yellow Poplar may be the owner of gas rights in various other Drilling Unit/Wells which are not the subject of a VGOB Order, or if it is, such Order has not been made publicly available.

48.    Neither the Director nor the VGOB have statutory or regulatory authority to decide matters involving interpretation of contracts or deeds and are therefore without legal authority to correct the Unknown Owner or resolve conflicting claims to gas interests in the Drilling Units/Wells identified in **Exhibit E** absent an Order of this Court.

---

[1] At the time of filing, information regarding the ownership percentage of two Drilling Units/Wells (VC502918 and VCI539008) was unavailable through the online database maintained by the VGOB.

{#1684293-1, 113770-00001-01}

49.    VGOB Orders identifying Yellow Poplar, Unknown have been placed among the land records of Buchanan County, Virginia, and cause a cloud on the title of Plum Creek to the gas interests once owned by Yellow Poplar.

50.    Upon representation made by EQT and Ranges Resources, VGOB entered Orders whereby Range Resources is identified as a conflicting claimant to CBM in each of the Drilling Units/Wells identified in **Exhibit E**.

51.    Range Resources has accepted, adopted and ratified its own and EQT's representations that Range Resources is a conflicting claimant in CBM in each of the Drilling Units/Wells identified in **Exhibit E**.  Range Resources has not advised  VGOB to the contrary or made any effort to correct or modify VGOB Orders adopting such representations.

52.    Range Resources asserts conflicting claims to CBM in the Drilling Units/Wells identified in **Exhibit E**, and such claims derive exclusively from its or its grantor's alleged ownership of the coalbed in the Drilling Unit/Well at issue.

53.    Under Virginia law, a conveyance, reservation, or exception of coal shall not be deemed to include coalbed methane.  Va. Code § 45.1-361.21:1.  *See also Harrison-Wyatt, LLC v. Ratliff,* 267 Va. 549, 593 S.E. 2d 234 (2004).

54.    Plum Creek's CBM rights in each of the Drilling Units/Wells identified in **Exhibit E** were severed from any mineral interest in coal or oil and conveyed by deed to Plum Creek's predecessors-in-interest and to Plum Creek.

55.    Plum Creek is the sole and exclusive legal and beneficial owner of the CBM rights identified in **Exhibit E** in the name of Yellow Poplar, Unknown, or in the name of a C. G. Jackson Record Owner (or its predecessor).  Neither EQT nor Range Resources has any ownership interest in such CBM.

{#1684293-1, 113770-00001-01}

56.    Defendants  Edwin F. Lagard, Jr., Elizabeth A. Cox, Trustee, William B. Baker, Jr., Trustee, Charles Bartlett, M.D., Chesapeake Appalachia, LLC, Lydia V. Newberry, Marlene McCall, Donna Vest, Donald A. McGlothlin, Jr., Mary L. McGlothlin Burton, Leah Anne McGlothlin, and Kevin T. McGlothlin have been identified as successors (or lessees of successors) to the purported record owners of CBM rights in the Drilling Units/Wells identified in **Exhibit D**.

57.    The claims of Defendants  Edwin F. Lagard, Jr., Elizabeth A. Cox, Trustee, William B. Baker, Jr., Trustee, Charles Bartlett, M.D., Chesapeake Applachia, LLC, Lydia V. Newberry, Marlene McCall, Donna Vest, Donald A. McGlothlin, Jr., Mary L. McGlothlin Burton, Leah Anne McGlothlin, and Kevin T. McGlothlin, to CBM in the Drilling Units/Wells identified in **Exhibit D** derive exclusively from their chain of title leading back to the C. G. Jackson Deed.  The C. G. Jackson Deed is null, void and of no effect for the reasons set forth above.  In addition such deed, even if given effect, conveyed only surface rights and no gas rights in the property at issue.

58.    Plum Creek's CBM rights in each of the Drilling Units/Wells identified in **Exhibit D** were severed from any mineral interest in surface and conveyed by deed to Plum Creek's predecessors-in-interest and to Plum Creek.

59.    Plum Creek is the sole and exclusive legal and beneficial owner of the rights in and to CBM in the Drilling Units/Wells identified in **Exhibit D** as being owned or leased by Defendants Edwin F. Lagard, Jr., Elizabeth A. Cox, Trustee, William B. Baker, Jr., Trustee, Charles Bartlett, M.D., Chesapeake Appalachia, LLC, Lydia V. Newberry, Marlene McCall, Donna Vest, Donald A. McGlothlin, Jr., Mary L. McGlothlin Burton, Leah Anne McGlothlin, and Kevin T. McGlothlin.

{#1684293-1, 113770-00001-01}

**E.**     ***Statutory Notice Requirements Were Not Complied With In Force-Pooling Gas Rights of Owner "Yellow Poplar, Unknown" (i.e., Plum Creek)***

60.     Under the Gas Act, upon the application of a gas or oil owner, VGOB is required to enter an order pooling all interests in a coalbed methane gas ("CBM") drilling unit for development and operation where, among other things, two or more separately owned tracts are embraced within the unit or there are separately owned interests in the drilling unit which have not agreed to pool their interests.  Va. Code § 45.1-361.21.

61.     In addition, where there are conflicting claims to the ownership of CBM, VGOB, upon application of "a claimant" who is a gas or oil owner, shall enter an order pooling all interests or estates in the CBM drilling unit for the development and operation thereof.  Va. Code § 45.1-361.22.

62.     Typically (but not always, as hereafter indicated), a CBM Unit is comprised of two or more separately owned tracts.  The CBM is allocated among the separate tracts on a proportionate acreage basis (i.e., on the same basis that the acreage of a tract bears to the total acreage in the CBM Unit).

63.     By statute and regulation, VGOB is to hold a hearing to determine the terms under which a pooling order may be entered, including, among other things, defining  the drilling unit and the location of the well, identifying the tracts comprising the drilling unit and the acreage in each tract, identifying all gas estate owners in the drilling unit and the portion of the unit assigned to each owner's interest, designating the gas owner who is authorized to drill and operate the well, prescribe conditions under which a gas owner may become a participating operator or exercise rights of election, establish the sharing of reasonable costs between participating operators, and identify those claimants who interests are subject to escrow.  Va. Code § 45.1-361.21.  The pooling order also provides for the establishment of an escrow

32

account into which monies attributable to contested CBM ownership interests and unknown "deemed lessors" shares are to be deposited.  Va. Code §§ 45.1-361.21(D) and -361.22(2) - (4).

64.    If VGOB approves the application, it enters a pooling order following the hearing and provides the known owners of gas interests in the CBM Unit a period of time (typically thirty days) to elect one of several options:  (1) sell or lease their interest to the operator, (2) become a "participating operator" by paying their share of the costs of the well, or (3) share in the revenues from the well on a carried basis as a "nonparticipating operator."  Va. Code § 45.1-361.21C(7).  However, if the owner remains unknown at the conclusion of the hearing, the opportunity to elect is forfeited.  Rather, at the conclusion of the hearing the unknown owner "shall be deemed to have elected to lease his interest" to the well operator.  Va. Code §§ 45.1-361.21(D) and (E); 45.1-361.22(6).  In addition, any person who fails to make an election "shall be deemed to have leased" his interest to the well operator.  Va. Code §§ 45.1-361.21(E) and -361.22(6).

65.    Under the circumstances of a "deemed" lease from an unknown owner, the well operator is required to place in escrow one-eighth of net proceeds attributable to the unknown owner's interests for the benefit of the unknown owner, and keeps for itself the remaining seven-eighths of CBM production.  The well operator also is required to place into escrow the CBM proceeds attributable to any "conflicting interests" plus all proceeds in excess of ongoing operational expenses as provided under the pooling order attributable to participating or nonparticipating operators.  Va. Code § 45.1-361.22(4).

66.    Under the Gas Act, the applicant for the pooling order (and supplemental orders) is required to provide written notice pursuant to provisions of Va. Code § 45.1-361.19 to each person identified as a potential CBM owner underlying the tracts within the CBM Unit, and to

"promptly notify" the VGOB where written notice is not possible due to the unknown identity or location of a person to whom notice is required.

67.    Prior to July 1, 2008, Va. Code § 45.1-361.19(B) required that the Board, twenty days in advance of the hearing:

> cause a notice of the hearing to be published in a newspaper of general circulation in the county or city where the land or major portion thereof which is the subject of the hearing is located.  Such notice shall be published at least twenty days in advance of the hearing date and shall include, at a minimum, the name of the applicant, a description of the location of the land which is the subject of the hearing, the purpose of the hearing, and the date, time and location thereof.

68.    As of July 1, 2008, Va. Code §  45.1-361.19(B) was amended to read;

> At least 10 days prior to a hearing, the Board shall publish its agenda in newspapers of general circulation that are widely circulated in the localities where the lands that are the subject of the hearing are located.  The agenda shall include the name of each applicant, the localities where the lands that are the subject of the hearing are located, the purpose of the hearing, and the date, time and location thereof.

69.    Where a person to whom notice is required is unknown at the time of the application, VGOB regulations require that "the applicant for the hearing shall cause a notice to be published in a newspaper of general circulation in the county, counties, city or cities where the land or a major portion thereof which is the subject of the application is located."  4 VAC 25-160-40(C) (Notice of hearings). According to the regulation, the notice shall include:

> (1)    The name and address of the applicant;
> (2)    A description of the action to be considered by the board;
> (3)    A map showing the general location of the area which would be affected by the proposed action or a description which clearly describes the location or boundaries of the area which would be affected by the proposed action sufficient to enable local residents to identify the area;
> (4)    The date, time and location of the hearing at which the application is scheduled to be heard; and
> (5)    How interested persons may obtain additional information or a complete copy of the application

{#1684293-1, 113770-00001-01}

70.    EQT has filed applications with VGOB to permit pooling in numerous CBM drilling units where it identified the CBM owner as Yellow Poplar, Unknown (now known to be owned by Plum Creek), all of which units are located in Buchanan County, Virginia.  In many of these drilling units, EQT comprised the unit of one tract and identified the gas rights as being owned "100%" by Yellow Poplar, Unknown.  EQT also misrepresented, under oath that Range Resources, the coal estate only owner, was a conflicting claimant to the gas rights in the CBM Unit.

71.    EQT identified the wells for the drilling units being challenged herein as being within the boundaries of Yellow Poplar's (now Plum Creek's) gas rights.

72.    Although required by statute to name all "potential owners" in its applications, and to provide actual notice to such "potential owners," EQT did not name or provide any actual notice of its applications to Plum Creek or anyone in its chain of title.  EQT nevertheless misrepresented under oath to VGOB that it had notified all parties required to be notified under the statute.

73.    When notices were published for the applications for the Yellow Poplar pooling orders (and supplemental orders), EQT published many of the notices of hearing and the hearing agendas, if any, in The Coalfield Progress.

74.    The Coalfield Progress is (and has been) a newspaper headquartered in Norton, Virginia with a circulation in Wise County, Virginia.  The Coalfield Progress is not a newspaper of general circulation in Buchanan County, Virginia.  EQT's notices did not meet the strict requirements of Virginia law.

75.    In addition, EQT's notices of publication make no mention of Yellow Poplar Lumber Company as last known owner or Plum Creek Timberlands, L.P. as potential owner.

35

The notices also fail to provide "a map showing the general location of the area which would be affected by the proposed action." The notices also contain no deed references, fail to name boundary owners, fail to reference tax maps or provide such other "description which clearly describes the location or boundaries of the area which would be affected by the proposed action sufficient to enable local residents to identify the area." Finally, the notices fail to indicate the action to be considered by VGOB and the consequences of failing to appear at the hearing, i.e., that the unknown would forfeit seven-eighths of its gas interests to the well operator/applicant, even if the operator had no ownership interest in the CBM drilling unit.

76.     EQT's failure to name Plum Creek as a potential owner and provide it actual notice as required by statute, its misrepresentations to VGOB, its failure to identify Plum Creek or Yellow Poplar or any other entity in the chain of title in the published notice for the pooling order hearing, its identification of Range Resources as an interested party even though EQT knew it had no interest in CBM, its publication in a newspaper not of general circulation in the locale where the property was located and its denial to Plum Creek of its right to elect were all actions taken by EQT to fraudulently conceal EQT's unlawful efforts to gain access to and control of Plum Creek's property interests, gas, and rightful proceeds for the sale of that gas through VGOB pooling orders. EQT's misconduct fraudulently concealed and obstructed the existence of Plum Creek's causes of action by cloaking EQT's conduct under the mantle of state authority.

77.     VGOB granted each and every application submitted by EQT identifying Yellow Poplar, Unknown. An example of an EQT application for a pooling order for a tract of gas rights owned by Yellow Poplar, Unknown, a VGOB pooling order, supplemental order and certificate of publication prepared by or for EQT is attached hereto as **Exhibit G.**

78.     Because EQT and/or VGOB did not comply with Virginia law in the notice and issuance of forced-pooling orders involving Yellow Poplar, Unknown, Plum Creek, as successor-in-interest to Yellow Poplar, Unknown has been denied due process of law, and each and every such forced-pooling order and supplemental order is unenforceable and void *ab initio*.

79.     As the operator of the Yellow Poplar CBM drilling units, EQT drilled the wells, produced CBM from each of the wells, and sold the CBM.  As EQT had no legal authority to produce and sell CBM owned by Plum Creek (as successor of Yellow Poplar), Plum Creek seeks an award of damages equal to eight-eighths of the value of all CMB produced and taken from these wells, together with interest thereon, and any monetary or economic benefits or profits derived therefrom by EQT based on the legal theories of trespass, conversion and unjust enrichment.  Plum Creek further seeks to enjoin EQT's continued trespass and conversion through removal of additional CBM attributable to Plum Creek's interests without Plum Creek's agreement or by proper authority under law.

## F.     *The Virginia Gas and Oil Act Provides for an Unconstitutional Taking of Plum Creek's Property As The Act is Applied in this Instance*

80.     The Gas Act with regard to CBM does not merely apportion rights among mineral owners.  Instead, it allows for the forced-pooling of CBM interests for their development and production without the request or consent of a single CBM owner in a drilling unit.  The Gas Act requires forced-pooling of CBM rights upon application by "any applicant" in any case where conflicting claims to ownership of CBM exists.  See Va. Code Ann. Sect. 45.1-361.22.  The person seeking the establishment and forced-pooling of a CBM drilling unit does not have to prove any ownership interest in the affected CBM estate.  Indeed, as with EQT's purported interests here in the Yellow Poplar CBM Units, the interest of EQT as the applicant derived from a lease from Range Resources of its gas interests which EQT knew were nonexistent.  The

{#1684293-1, 113770-00001-01}

language of the Gas Act permits a potential operator which may have no true CBM ownership rights whatsoever, to apply to establish a forced-pooled CBM drilling unit consisting of only one gas owner which is unconsenting (and, at the time, unknown), and be designated as CBM well operator.

81.    Here, under the auspices of the Act, EQT applied for forced-pooling orders to establish numerous CBM drilling units where the gas rights were identified by EQT as 100% owned by Plum Creek's predecessor in title, Yellow Poplar, Unknown.  In other words, there was only one tract in each of these CBM Units, and that tract of gas rights was owned completely by Yellow Poplar / Plum Creek.

82.    Though by the time of its applications the law had been clearly established in *Harrison-Wyatt, LLC v. Ratliff,* 267 Va. 549, 593 S.E.2d 234 (2004), that a severed coal estate only owner had no interest in the CBM estate, EQT falsely asserted that the coal only estate owner Range Resources was a conflicting claimant in each unit.  VGOB entered the force-pooling orders because, as VGOB and EQT acknowledge, VGOB has no legally cognizable authority under the Act to resolve conflicts of ownership asserted by the applicant / well operator.  EQT had under lease Range Resources' coal only interests in each unit.  Consequently, by virtue of the lease from Range Resources of its  "conflicting interest," EQT successfully asserted to VGOB that it was a "gas owner" or a "claimant" in the CBM Unit, thereby providing it standing to seek and obtain a forced-pooling order.  *See* Va. Code §§ 45.1-361.21 and -361.22.

83.    Moreover, further distinguishing the situation here from that addressed in *Adair v. EQT Production Co.,* 2011 WL 4527433 (W.D. Va. Jan. 21, 2011), the Gas Act's application here did not advance Yellow Poplar's correlative rights in the gas at issue.  In other words, the Gas Act did not promote in the unknown Yellow Poplar a right to have a fair and reasonable

38

opportunity to obtain and produce its just and equitable share of production of gas from the pool in which it had an interest. *See* Va. Code § 45.1-361.1. This Court has ruled that that *opportunity* is provided under the Gas Act "by requiring the gas owner have the right to elect to receive his full proportional share of the net proceeds from a well by choosing to either become a participating or nonparticipating operator." *Id.* at 21.

84.    Here, though, the Gas Act did not provide unknowns, including Yellow Poplar, a fair and reasonable opportunity to elect. Rather, under the Act seven-eighths of the unknown's property interest is forfeited to a private party (EQT) who has no gas ownership in the CBM Unit pool (including by lease or otherwise) if the unknown does not come forward within as little as ten days of publication of a notice which is not required to be published more than once, to identify the last known owner, to provide deed, plat or tax map references or boundaries, to provide the relief sought in the application, to provide notice of the right to elect or to provide notice of the severe consequences (forfeiture) of failing to come forward and elect.

85.    Application of the Gas Act in this instance permitted a private party operator (EQT) to force "pool" into a CBM unit a tract 100% owned by another private party (Plum Creek), and by virtue of inadequate notice and no opportunity to elect, operated as a forfeiture of seven–eighths of the gas owner's property interests to the private party operator. The Gas Act's provisions effected an unconstitutional taking of Plum Creek's property interests for private purposes and/or for a public use under State authority and/or without adequate and just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 11 of the Virginia Constitution.

86.    The Gas Act, in the application of its provisions to the circumstances presented by this case, must be declared unconstitutional, and the resulting VGOB pooling orders involving

{#1684293-1, 113770-00001-01}

Yellow Poplar, Unknown declared void and unenforceable.  As EQT had no legal authority to produce and sell CBM owned by Plum Creek (as successor of Yellow Poplar), Plum Creek seeks an award of damages equal to eight-eighths of the value of all CMB produced and taken from these wells together with interest thereon, and any monetary or economic benefits or profits derived therefrom by EQT based on the legal theories of trespass, conversion and unjust enrichment.  Plum Creek further seeks to enjoin EQT's continued trespass and conversion through removal of  from removing additional CBM attributable to Plum Creek's interests without Plum Creek's agreement or by proper authority under law.

> **G.**      ***For those VGOB Orders which are Valid, Plum Creek is Entitled to the Proceeds from the Escrow Account, Proceeds from Future Production, and All Other Monies Which EQT Has Not Properly Escrowed Under the Virginia Gas Act***

87.      With respect to those forced-pooling orders properly entered bv VGOB or unchallenged herein with respect to Plum Creek's gas rights, because Yellow Poplar was unknown and EQT claimed conflicting interests, certain proceeds from the sale of gas from the CBM Units were to be escrowed.  Specifically, EQT was required to deposit into the escrow account at least a bonus of $5.00/acre and one-eighth of net proceeds from the sale of the gas extracted as provided by statute, regulation and VGOB order.  See generally Va. Code § 45.1-361.22(4) and -361.21(7).

88.        Prompted by local newspaper coverage of the VGOB escrow account, VGOB retained the accounting firm Robinson, Farmer, Cox Associates "to analyze computations associated with forty (40) escrow accounts held by the ... Board's ... Escrow Agent in accordance with pooling orders and disbursement orders issued by the Board."  Robinson, Farmer found very high error rates in the well accounts its analyzed and concluded that "a proper accounting of the escrow accounts held within the pooled bank account(s) is not taking place."  It also found

that errors in deposits were not being identified because the timing and amount of gas company deposits were not compared to well production records, and the gas companies are not remitting funds in a timely manner which, among other things, reduce interest earnings. Finally, it found that deductions were ill-defined and were not being applied consistently.

89.    Robinson, Farmer also provided to VGOB an Escrow Account Audit Update, dated July 17, 2012. Robinson, Farmer again noted that it was unable to audit the Escrow Account or its 770 subaccounts due to errors in account balances. Some of the problems noted were that (1) escrow bank statements could not be located; (2) deposits to subaccounts could not be traced to gas company records; (3) checks issued from gas companies had no corresponding deposit into the escrow account that could be located; and (4) variances as much as $200,000 between gas company records and subaccount balances. In one subaccount royalties were underpaid by as much as $860,000 over the life of the well.

90.    In 2010, the Virginia General Assembly enacted legislation requiring the Auditor of Public Accounts to perform an operational review of the Board's policies and procedures for the collection and disbursement of Escrow Account funds and found that it was necessary for VGOB to adopt and implement additional policies to ensure accuracy and completeness of the escrow accounts.

91.    Upon information and belief, "deemed lease" royalties paid by EQT into escrow attributable to Plum Creek's interests were calculated improperly and were insufficient. For example, in marketing the CBM produced, EQT was obligated to act as a reasonably prudent operator and to market and sell the CBM for the highest price obtainable. However, in calculating and depositing its "deemed lease" royalty payments into escrow, EQT has, upon information and belief, improperly used gas prices that were less than the highest price

41

obtainable, including prices from the sale of gas by EQT to affiliates on a non-arm's length basis. Upon information and belief, EQT also has taken deductions for costs which were not actual, direct, reasonable and necessary.

92.    Upon information and belief EQT has not properly escrowed the CBM proceeds attributable to Plum Creek's ("Yellow Poplar's") interests.

93.    With respect to valid VGOB Orders pertaining to Yellow Poplar, Unknown in Buchanan County, Virginia, Plum Creek is entitled to a full and accurate accounting of all funds deposited in escrow for each such well, including the quantity of gas produced, the sale price and all deductions claimed, which will reveal the full extent of EQT's wrongful conduct and Plum Creek's resulting damages.

94.    In addition, to the extent that EQT has deposited into escrow the proper amount of proceeds attributable to Plum Creek's interests, Plum Creek is entitled to a judgment directing EQT to petition VGOB for the disbursement of such funds to Plum Creek as required by law.

**COUNT I**
**(Declaratory Judgment)**
**All Defendants**

95.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 94, inclusive, as though fully set forth herein.

96.    There is an actual and immediate controversy between Plum Creek and Defendants within the meaning of 28 U.S.C. § 2201, *et seq.*, as to the parties' respective rights and legal relations in connection with the real property described herein and this controversy is concrete and capable of judicial resolution.

97.    Plum Creek contends that it is the successor in title to interests in certain real property located in the watersheds of Levisa River and Dismal Creek and their tributaries in

Buchanan County, Virginia which were originally conveyed by Gallie Friend, Trustee of the Bankrupt Estate to Yellow Poplar to W.M. Ritter Lumber Company by deed dated September 21, 1929, recorded in the Clerk's Office of Buchanan County, Virginia in Deed Book 64, Page 473.

98.     The C. G. Jackson deed and each mesne conveyance found in the land records of the Clerk's Office of the Circuit Court of Buchanan County, Virginia ending in record title in C. G Jackson Record Owners are a legal nullity and are incapable of conferring any right, title, estate or interest in or to the 1,000 acres, more or less, as described in the C. G. Jackson Deed. As such these instruments constitute a cloud on the rightful title of Plum Creek to such real property and should be quieted and removed by the Court.

99.     Any claim to ownership of CBM by the C. G. Jackson Record Owners in the Drilling Units/Wells identified in **Exhibit D** is unsupported by the deeds in the chain of title and is wholly without legal merit.

100.     As successor in title in certain real property located in the watersheds of Levisa River and Dismal Creek and their tributaries in Buchanan County which were originally conveyed by Gallie Friend, Trustee of the Bankrupt Estate of Yellow Poplar Lumber Company to W.M. Ritter Lumber Company by deed dated  September 21, 1929, recorded in the Clerk's Office of Buchanan County, Virginia in Deed Book 64, Page 473, Plum Creek is also the owner of all gas rights as indicated in the Drilling Units/Wells identified in **Exhibit E**.

101.     Range Resources asserts conflicting claims to CBM gas in each of the Drilling Units/Wells as indicated in **Exhibit E**.

43

102.    Range Resources' conflicting claims to CBM in each of the Drilling Units/Wells as indicated in **Exhibit E** is unsupported by the deeds in its chain of title and is wholly without legal merit.

103.    EQT, Range Resources and/or Columbia Natural Resources are Unit Operators of one or more of the Drilling Units/Wells identified in **Exhibit E**.

104.    The VGOB Orders recorded in the land records of Buchanan County, Virginia, for Drilling Units/Wells located in the watersheds of Levisa River, Dismal Creek and their tributaries in Buchanan County, Virginia, and which identify Yellow Poplar, Unknown as gas owner or which identify as gas owner one or more of the Defendants based on their purported interests as described herein constitute a cloud on the rightful title of Plum Creek which this Court should quiet and remove.

105.    In addition, Plum Creek is entitled to a declaration that certain VGOB Orders are void and unenforceable, and that EQT had no legal authority to produce and sell CBM attributable to Plum Creek's interests.

106.    To the extent any such Orders are valid, Plum Creek is entitled to an accounting of all CBM proceeds attributable to its interests and which were or should have been deposited by EQT and held in escrow in the name of Yellow Poplar, Unknown, or in the name of a C. G. Jackson Record Owner, if any, in connection with each of the Drilling Units/Wells identified in **Exhibit E**.  Plum Creek is also entitled to a judgment directing VGOB to disburse the escrowed funds to Plum Creek as required by law.

{#1684293-1, 113770-00001-01}

**COUNT II**
**(Trespass)**
**Against EQT**

107.    Plum Creek realleges and incorporates by reference the allegations contained in paragraphs 1 through 106, inclusive, as though fully set forth herein.

108.    Trespass is the unauthorized use of or entry onto another's property.

109.    Because the VGOB pooling orders are void, EQT had no lawful authority to produce CBM attributable to Plum Creek's interests.

110.    EQT exercised wrongful dominion and control over the CBM and its proceeds attributable to Plum Creek's CBM interests, and deprived Plum Creek of such CBM and its value by wrongfully claiming that it had a lawful right to apply for and obtain a pooling order governing Plum Creek's CBM rights.  EQT has done the same with respect to CBM and CBM sales proceeds it has converted due to the underpayment of royalties.

111.    EQT took possession of and sold CBM attributable to Plum Creek's interests, and did so without receiving lawful authorization or permission from Plum Creek or its predecessors in title.

112.    EQT's actions constitute actionable and continuing trespass upon Plum Creek's gas ownership interests including its tangible personal property.  Such actions were taken willfully and in bad faith and in conscious disregard for the rights of others such as Plum Creek.

113.    As a direct and proximate result of EQT's misconduct, Plum Creek has been damaged and is entitled to recover its compensatory and exemplary damages from EQT, along with prejudgment interest and all other relief deemed appropriate by the Court.

{#1684293-1, 113770-00001-01}

**COUNT III**
**(Conversion)**
**Against EQT**

114.    Plum Creek realleges and incorporates by reference the allegations contained in paragraphs 1 through 113, inclusive, as though fully set forth herein.

115.    With regard to CBM taken from wells which were not governed by any valid VGOB pooling order, EQT has willfully interfered with and converted Plum Creek's CBM, CBM proceeds and related property rights, without lawful justification.  EQT has done the same with respect to CBM and CBM sales proceeds it has converted  due to the underpayment of royalties.  As a result, Plum Creek has been deprived of possession, use and value of the CBM produced from its property interests, and the proceeds therefrom.

116.    EQT's conduct constitutes an unlawful conversion of the CBM production that is attributable to Plum Creek's ownership interests and/or sales proceeds derived from the sale of such CBM production.  Plum Creek is entitled to receive from EQT an amount of money equal to the gross revenues received by EQT from the sale of Plum Creek's CBM production, or the fair market value of such CBM production, whichever is greater.

117.    EQT's actions constitute actionable conversion of Plum Creek's gas ownership interests and the proceeds from the production of those interests.  Such actions were taken willfully and in bad faith and in conscious disregard for the rights of others such as Plum Creek.

118.    As a direct and proximate result of EQT's misconduct, Plum Creek has been damaged and is entitled to recover compensatory and exemplary damages from EQT, along with prejudgment interest and all other relief deemed appropriate by the Court.

**COUNT IV**
**(Unjust Enrichment)**
**Against EQT**

119.     Plum Creek realleges and incorporates by reference the allegations contained in paragraphs 1 through 118, inclusive, as though fully set forth herein.

120.     Benefits attributable to Plum Creek's CBM ownership interests, including CBM production volumes, sales proceeds, attendant tax credits, and other benefits, have been conferred on EQT.  EQT knew of such benefits and should reasonably have expected to repay Plum Creek for the same.  EQT accepted and retained the benefits without paying Plum Creek for the value of the benefits, and accepted and retained such benefits under circumstances that render it inequitable for EQT to retain the benefits without  paying Plum Creek for their value.

121.     Plum Creek is entitled to recover the value of the benefits attributable to Plum Creek's ownership interests that were accepted and retained by EQT, and any and all other relief deemed appropriate by the Court.

**COUNT V**
**(Breach of Fiduciary Duties)**
**Against EQT**

122.     Plum Creek realleges and incorporates by reference the allegations contained in paragraphs 1 through 121, inclusive, as though fully set forth herein.

123.     To the extent of any valid VGOB orders, EQT owed fiduciary duties to Plum Creek by virtue of (a) EQT's status as a Board appointed well operator of CBM units created through compulsory/forced-pooling; (b) EQT's control over and handling, as unit operator, of CBM production and sales proceeds for the benefit of persons owing interests in the CBM Unis operated by EQT, including Plum Creek; and/or (c) EQT's undertakings to act as agent and/or joint venturer for, or for the benefit of, other interest owners in the CBM Units operated by EQT,

{#1684293-1, 113770-00001-01}

including EQT, in regard to the production, marketing and sale of CBM produced for the CBM Units and in regard to the accounting and revenue distribution functions related thereto.

124.    By virtue of its fiduciary duties, EQT had an affirmative duty to correctly identify the interest owners in the CBM Unit; calculate and pay the true and correct amount of monies to the interest owners, including Plum Creek; account for all of the CBM produced and sold by EQT; and fully and accurately report and disclose all material information relating to EQT's calculation of is payments.

125.    EQT's acts and omissions as set forth herein constitute breaches of its fiduciary duties owed to Plum Creek, and were taken in conscious disregard of the rights of others, including Plum Creek.

126.    Plum Creek has been damaged as a direct and proximate result of these breaches and is entitled to recover compensatory and exemplary damages from EQT, and any and all other relief which the Court may deem appropriate.

## COUNT VI
### (Injunctive Relief)
### Against EQT

127.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 126, inclusive, as though fully set forth herein.

128.    EQT's trespass upon and conversion of Plum Creek's property rights is continuing.  Unless EQT ceases the same, Plum Creek will suffer irreparable injury for which there is no adequate remedy at law.

129.    Therefore Plum Creek requests the entry of an Order enjoining EQT's continued production of CBM attributable to Plum Creek's CBM ownership.

{#1684293-1, 113770-00001-01}

### PRAYER FOR RELIEF

WHEREFORE, Plum Creek requests that the Court, pursuant to 28 U.S.C. § 2201, hear evidence *ore tenus* and declare the respective rights and legal relations of the parties as follows:

A.    That the Court bring before it all necessary, proper and interested parties and declare that all such parties are before the Court;

B..    That the Gallie Friend Deed conveyed to W.M. Ritter, Yellow Poplar's surface and gas rights in real property owned by Yellow Poplar on September 21, 1929, and located in the watersheds of the Levisa River, Dismal Creek and their tributaries in Buchanan County, Virginia;

C.    That **Exhibit C** properly identifies the watersheds of the Levisa River, Dismal Creek and their tributaries in Buchanan County, Virginia within the meaning of the Gallie Friend Deed;

D.    That Plum Creek is the successor in title in and to the property rights conveyed by the Gallie Friend Deed, including in Tract 10 (surface rights in 1000 acres) and Tract 11 (gas rights in 3,877.5 acres) of the Excelsior Coal and Lumber Company deed dated January 5, 1906;

E.    That the Instrument dated October 16, 1930, recorded at Deed Book 65, Page 593 in Buchanan County, Virginia, by which Gallie Friend purported to convey to C. G. Jackson 1,000 acres is null, void and of no effect;

F.    That leases, instruments and deeds memorializing mesne conveyances found in the chains of title originating with the C. G. Jackson Deed and ending in purported record title in certain defendants are each null, void and of no effect;

G.    That Plum Creek is the successor in title to gas rights purportedly pooled in the Drilling Units/Wells identified in **Exhibit E** under VGOB Orders which identify the gas owner

*{#1684293-1, 113770-00001-01}*

as "Gallie Friend, Trustee," "Yellow Poplar Lumber Company, Owner Unknown," or similar designation;

H.      That Plum Creek is the successor in title to gas rights purportedly pooled in the Drilling Units/Wells identified in **Exhibit D** under VGOB Orders which identify as gas owner one or more of the Defendants based on their purported interests as described herein;

I.      That Plum Creek is the sole and exclusive legal and beneficial owner of the gas interests in the Drilling Units/Wells identified in **Exhibit E** and that the Defendants have no claim thereto;

J.      That certain VGOB pooling orders identifying "Gallie Friend, Trustee," "Yellow Poplar Lumber Company, Owner Unknown," or similar designation are void and unenforceable on the grounds that their issuance did not comport with Virginia law;

K.      That certain VGOB pooling orders identifying "Gallie Friend, Trustee," "Yellow Poplar Lumber Company, Owner Unknown," or similar designation are void and unenforceable on the grounds that the Gas Act, as applied here, violates rights guaranteed by the Constitutions of the United States and the Commonwealth of Virginia;

L.      That EQT had no legal authority to produce and sell CBM attributable to the interests of Plum Creek;

M.      That to the extent VGOB's orders are valid, Plum Creek is entitled to all funds escrowed in the name of "Gallie Friend, Trustee," "Yellow Poplar Lumber Company, Owner Unknown," or similar designation, or escrowed in the name of a C. G. Jackson Record Owner in connection with Drilling Units / Wells identified in **Exhibit E**, or otherwise escrowed due to conflicting claims which the Court has resolved herein in favor of Plum Creek;

*[#1684293-1, 113770-00001-01]*

N.      That all split agreements between Range Resources and any C.G. Jackson Record Owner establishing the basis for the release of certain escrowed funds and which purport to set forth an agreed division of future royalties are null, void and of no effect;

O.      That to the extent that VGOB's orders are valid, the Court order EQT, Range Resources and/or Chesapeake Appalachia, LLC f/k/a Columbia Natural Resources, LLC as the designated operator to provide a full and complete accounting of all proceeds which were or should have been deposited in escrow;

P.      That to the extent that VGOB's orders are valid, that the Court order that the operator (EQT) comply in all respects with Virginia Code § 45.1-361.22 by timely petitioning the VGOB for the disbursement to Plum Creek of all escrowed funds to which it is rightfully entitled;

Q.      That Plum Creek be awarded compensatory and exemplary damages in an amount to be proven at trial;

R.      That Plum Creek be awarded prejudgment interest and its costs in this behalf expended;

S.      That the Decree entered in this action be spread among the land records of Buchanan County, Virginia so as to quiet and remove any cloud on the rightful title of Plum Creek in and to the real property at issue; and

T.      That the Court issue such other and further orders and grant such other and further relief as equity may deem meet and the nature of this proceeding may require.

TRIAL BY JURY IS HEREBY DEMANDED.

[#1684293-1, 113770-00001-01]

Respectfully submitted,

PLUM CREEK TIMBERLANDS, L.P.

By:  */s/     Francis H. Casola*

Francis H. Casola (VSB #29108)
WOODS ROGERS PLC
Wells Fargo Tower, Suite 1400
10 South Jefferson Street
P.O. Box 14125
Roanoke, Virginia 24038-4125
540.983.7600 (telephone)
540.983.7711 (fax)
casola@woodsrogers.com

T. Shea Cook, Esq. (VSB #34832)
T. SHEA COOK, P.C.
P.O. Box 507
2411 Second Street
Richlands, Virginia 24641

Aaron B. Houchens, Esq. (VSB #80489)
STANLEY, HOUCHENS & GRIFFITH
13508 Booker T. Washington Hwy.
Moneta, Virginia 24121
ahouchens@shg-law.com

    *Counsel for Plum Creek Timberlands, L.P.*

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 28th day of April, 2014, a true and accurate copy of the

foregoing was provided to the following participant via the Court's CM/ECF electronic filing

system or via U.S. Mail, postage prepaid:

        Wade W. Massie, Esq.
        Mark L. Esposito, Esq.
        Cameron S. Bell, Esq.
        Penn, Stuart & Eskridge
        P.O. Box 2288
        Abingdon, Virginia 24212
        wmassie@pennstuart.com

        *Counsel for Defendants Range Resources-Pine Mountain, EQT Production*
        *Company, Heartwood Forestland Fund IV, L.P.*

*{#1684293-1, 113770-00001-01}*

John M. Lamie, Esq.
Abingdon, Virginia
jlamie@blglaw.us

> *Guardian Ad Litem for Unknown Successors in Title to Yellow Poplar Lumber Company, Inc.*

R. Lucas Hobbs
Elliott Lawson & Minor, P.C.
110 Piedmont Avenue, Suite 300
Bristol, VA 24201

J. Scott Sexton, Esq.
Gregory D. Habeeb, Esq.
James J. O'Keefe, Esq.
Gentry Locke Rakes & Moore, LLP
10 Franklin Road, SE, Suite 800
Roanoke, VA 24011

> *Counsel for Edwin F. Legard, Jr.; Elizabeth Anne Cox, Trustee of the Elizabeth Anne Cox Trust; William B. Baker, Jr., Trustee of the Emily P. Baker Generation Skipping Trust; Michael Trivett and Matthew Trivett*

William E. Bradshaw, Esq.
William E. Bradshaw, P.C.
302 Shawnee Avenue
Big Stone Gap, VA 24219

> *Counsel for Chesapeake Appalachia, LLC*

Charles Bartlett
432 East Main Street, Suite G
Abingdon, VA 24210

Hon. Mark R. Herring          (Via Certified Mail)
Attorney General of Virginia
Office of the Attorney General
900 East Main Street
Richmond, VA 23219

                                         */s/ Francis H. Casola*

{#1684293-1, 113770-00001-01}

# EXHIBIT A

64/473

CLERK'S FORM NO. 12 ADJUDICATION OF BANKRUPTCY

DISTRICT COURT OF THE UNITED STATES

WESTERN DISTRICT OF SOUTH CAROLINA

IN THE MATTER OF

YELLOW POPLAR LUMBER COMPANY A CORP.

PICKENS, SOUTH CAROLINA            :   NO. B-1101   In Bankruptcy.
                    Bankrupt.      :

At Greenwood, S.C. in said District, on the 7th day of November, A.D. 1928, before
the Honorable H.H. Watkins, Judge of our said Court in Bankruptcy, the petition of
White Oak Lumber Company, a Corporation  that Yellow Poplar Lumber Company, a Corporation
be adjudged a Bankrupt, within the true intent and meaning of the Acts of Congress re-
lating to Bankruptcy, having been heard and duly considered, the said Yellow Poplar
Lumber Company, a Corporation, Pickens, S.C., Pickens County is hereby declared and ad-
judged a bankrupt accordingly.

          Witness the Honorable     H.H. Watkins,  Judge of the said Court, and the seal
                                    thereof, at Greenwood, S.C., in said District, on the
                                    7th day of November, A.D. 1928.

                                            D.C. Durham    Clerk
                                    by (Signed) Lydia Burriss, Deputy Clerk.


     UNITED STATES OF AMERICA
                               )  SS:
     West District of S.C.     )

     I, D.C. Durham, Clerk of the United District Court in and for the Western
District of South Carolina, do hereby certify that the annexed and foregoing is a true
and full copy of the original adjudication in Bankruptcy and decree in the matter of
Yellow Poplar Lumber Company, Bankrupt now remaining among the records of the said
Court
County, in my office.

     IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the seal of
the aforesaid Court at Greensville, S.C., this 24th day of September, A.D. 1929.

                                        D.C. Durham    Clerk,
                                    By E. McGregor    Deputy Clerk.


     Virginia, Buchanan County, to-wit:

     In the Clerk's Office of the County and State aforesaid, the 11th day of
November, 1929, at 4:00 P.M., the foregoing writing was presented and admitted to record,
together with the annexed certificates of acknowledgment recorded in Deed Book NO. 64,
page 470.

                                    TESTE: GEO. W. MULLINS,    CLERK,
                                    BY J. L. Looney    D.C.


          THIS DEED, made this 21st day of September, 1929, between Gallie
     Friend of Pickens, State of South Carolina, the duly qualified and
     acting Trustee in Bankruptcy of the Estate of Yellow Poplar Lumber
     Company, a Corporation created under the laws of the State of
     Illinois, (but having been on November 7th, 1928, and for many months

prior thereto, engaged in buisness in the County of Pickens, in the Western District of
the State of South Carolina, where it maintained its principal office and place of buisness)
party of the first part, and W.M. Ritter Lumber Company, a corporation chartered, organized
and existing under the laws of the State of West Virginia, party of the second part;

WITNESSETH:-

WHEREAS, in the District Court of the United States, for the Western District of
South Carolina, at Greenville, the said Yellow Poplar Lumber Company, having had its
principal place of buisness in the County of Pickens, in said District, for more than six
months previous thereto, on the 7th day of November, 1928, was duly adjudged a bankrupt
upon the petition of White Oak Lumber Company, filed in said Court against it on the 17th
day of July, 1928, and in accordance with the provisions of the Acts of Congress relating
to Bankruptcy; and

WHEREAS, by the order of the United States District Court, the said matters in bank-
ruptcy were, on the 7th day of November, 1928, referred to E.M. Blythe, Referee in
bankruptcy in said Court, to take such further proceedings therein as are required by
said Acts of Congress relating to bankruptcy; and

WHEREAS, the creditors of said bankrupt estate, at their first meeting after said ad-
judication, held on the 4th day of December, 1928, appointed the said Gallie Friend Trustee
of said estate, which said appointment of said Gallie Friend, Trustee, was duly approved by
the said E.M. Blythe, Referee in Bankruptcy; and

WHEREAS, the said Gallie Friend, on the 4th day of December, 1928, before entering
upon the performance of his official duties, duly qualified as such Trustee by entering
into bond to the United States, with surety, which was duly approved by the Referee,
conditioned for the faithful performance of his official duties; and

WHEREAS, said Yellow Poplar Lumber Company, a bankrupt, at the time of the aforesaid
adjudication, and at the time of the appointment and qualifiation of said Trustee as
aforesaid, owned and was possessed of certain lands, containing approximately four thousand
three hundred eighty- nine and twenty-nine one hundreths (4,389.29) acres, more or less,
situated in Buchanan County, Virginia; and

WHEREAS, the said Yellow Poplar Lumber Company, by a certain indenture of mortgage or
deed of trust, bearing date the 4th day of January, 1927, of record in the office of
the County Clerk of Buchanan County, Virginia, in Trust Deed Book 3, at page 213, conveyed
and assigned to Edwin Mann, as Trustee, all of the aforesaid lands in Buchanan County,
Virginia, and interests therein, and hereinafter more particularly described; and

WHEREAS, the said deed of trust was given to secure the payment of a certain negotiable
promissory note, made and executed by Yellow Poplar Lumber Company and Leon Isaacsen, to
the said W.M. Ritter Lumber Company, a corporation, and bearing date the 4th day of
January, 1927, for the sum of One Hundred Thirty-One Thousand Six Hundred Seventy-Eight
($131,678.00) Dollars, payable on January 1st, 1928, and bearing interest from January 10th,
1927, until paid, at the rate of (6%) per cent. per annum, payable annually, said note
being payable at the First National Bank, at Bluefield, West Virginia; and

WHEREAS, on the 4th day of January, 1927, the Yellow Poplar Lumber Company did execute
and deliver to the said W.M. Ritter Lumber Company its deed, commonly called an option,
which is of record in the office of the Clerk of Buchanan County, Virginia, in Deed Book
63, at page 43, whereby, for value received, the said Yellow Poplar Lumber Company did

grant for a period ending January 1st, 1928, the said W.M. Ritter Lumber Company the exclusive right to purchase, at the price of Thirty ($30.00) Dollars per acre, the lands hereinafter described, being the same lands contained in said deed of trust to Edwin Mann, as Trustee; and

WHEREAS, on December 5th, 1927, the said Yellow Poplar Lumber Company, *and W.M. Ritter Lumber Company* entered into an agreement, whereby, in consideration of the premises, the operation and effect of the said deed of trust and option to purchase was extended for a period of twelve months from January 1st, 1928, all other terms and conditions of said agreement and deed of trust to remain in full force and effect; the said extension agreement being recorded in the office of the Clerk of Buchanan County, Virginia, on March 3rd, 1928, in Deed Book 53, at page 38; and

WHEREAS, there has been paid upon said note the sum of Four Thousand ($4,000.00) Dollars on January 27th, 1928, and the sum of Thirty-Nine Hundred & 68/100 ($3,900.68) Dollars on February 18th, 1928, and there is due upon said note, principal and interest, as of November 7th, 1928, the sum of One Hundred Thirty-Eight Thousand Four Hundred Fifteen & 53/100 ($138,415.53) Dollars, and, whereas, no further payments have been made and the same is now still past due; and

WHEREAS, at a meeting of the creditors of the Yellow Poplar Lumber Company, held February 15th, 1929, at the office of the Referee, H.M. Blythe, Greenville, S.C., called for the purpose of considering surrender of the lands covered by the W.M. Ritter Lumber Company's mortgage in satisfaction of the debt, of which meeting ten days notice was given by mail to each of said creditors to their respective addresses as they appear in the list of creditors of the bankruptcy, the W.M. Ritter Lumber Company offered to accept in satisfaction of said debt of Yellow Poplar Lumber Company, a deed to said property, free from all taxes, assessments and all other liens and encumbrances; and

WHEREAS, at said meeting, the Trustee, Gallie Friend, reported that the land had not been appraised because of the heavy encumbrance thereon, and that in his opinion the said was not now worth anything like the amount of the mortgage indebtedness, and, whereas, it was thereupon moved and carried that the appraisers theretofore appointed should be instructed to appraise the land in question, and if the appraisal was less than the mortgage debt, that the Trustee be authorized to execute a deed to W.M. Ritter Lumber Company; and

WHEREAS, said appraisers were directed by the Court to appraise said lands, and by order of the District Court for the Western District of South Carolina, dated May 15th, 1929, it was provided that in the event the report of the appraisers should show that the lands covered by the mortgage held by W.M. Ritter Lumber Company are of less value than the amount of the mortgage indebtedness, that the Trustee, Gallie Friend, be authorized to execute a deed to W.M. Ritter Lumber Company for the said property in full satisfaction of said debt; and

WHEREAS, the report of the appraisers filed August 2nd, 1929, states that the value of said lands is One Hundred Thirty Thousand ($130,000.00) Dollars, this being less than the amount of said mortgage indebtedness; and

WHEREAS, by order of the District Court for the Western District of South Carolina, dated September 13th, 1929, the said Gallie Friend, as Trustee in Bankruptcy, was authorized and directed to grant and convey by deed, with covenants of special warranty, to the said W.M. Ritter Lumber Company, free from all taxes, assessments, liens and encumbrances,

all of the aforesaid lands in Buchanan County, Virginia, containing approximately four thousand three hundred eighty-nine and twenty-nine one hundreths (4,389.29) acres, more or less, and hereinafter more particularly described;

NOW, THEREFORE, in consideration of the premises and pursuant to the aforesaid order of the Court, and in consideration of the sum of One ($1.00) Dollar paid by the said party of the second part to the said party of the first part, the receipt of which is hereby acknowledged, the said party of the first part, as Trustee of the aforesaid Yellow Poplar Lumber Company, Bankrupt, does hereby grant and convey unto the said W.M. Ritter Lumber Company, its successors and assigns, all the following described lands, and interests therein:-

"All of the following tracts, pieces or parcels of land situate on the watersheds of Levisa River and Dismal Creek and their tributaries in Buchanan County, Virginia, more particularly designated and described as follows, to-wit:-

"FIRST: All of those certain tracts or parcels of land conveyed to the Yellow Poplar Lumber Company by J.N. Watkins, Commissioner, by deed dated April 29th, 1902, and of record in the office of the Clerk of the Circuit Court of Buchanan County, Virginia, in Deed Book Y, on page 250, to which reference is had, said deed conveying four several tracts aggregating 1,627.05 acres, more or less.

"SECOND: That certain tract or parcel of land conveyed to the Yellow Poplar Lumber Company by H.C. Stuart and Margaret B. Stuart, his wife, by deed dated October 16th, 1901, and of record in the office of the Clerk of the Circuit Court of Buchanan County, Virginia, in Deed Book Q, beginning on page 43, to which reference is had, said tract so conveyed containing 643 acres, more or less.

"THIRD: All of those certain tracts or parcels of land conveyed to said Yellow Poplar Lumber Company by H.C. Stuart and Margaret B. Stuart, his wife, Harmon Newberry and Mary A. Newberry, his wife, by deed dated October 16th, 1901, and of record in the office of the Clerk of the Circuit Court of Buchanan County, Virginia, in Deed Book Q, beginning at page 36, to which reference is had, said deed conveying several tracts containing in the aggregate 2,117.24 acres, more or less.

"FOURTH: All of that certain tract or parcel of land conveyed to said Yellow Poplar Lumber Company by deed from D.C. Lockhart and Mandy Lockhart, his wife, by deed dated August 30th, 1905, and of record in the office of the Clerk of the Circuit Court of Buchanan County, Virginia, in Deed Book 31, page 80, to which reference is had, said tract of land so conveyed containing two acres, more or less.

"It being the intention to embrace herein and convey hereby all of the tracts, pieces or parcels of land, or interests in land owned by Yellow Poplar Lumber Company on the watersheds of Levisa River and Dismal Creek and their tributaries in said Buchanan County, Virginia, whether herein above described, or referred to, or not."

The foregoing being the lands described in the said mortgage deed of trust executed by Yellow Poplar Lumber Company to Edwin Mann, Trustee, dated January 4th, 1927, and recorded in Trust Deed Book 3, page 213, in the Office of the Clerk of Buchanan County, Virginia.

The said party of the first part covenants that he will warrant the properties hereby conveyed, against himself as Trustee, and all those claiming under him as Trustee.

Witness the following signature and seal.

                              Gallie Friend        (SEAL)
                              Trustee in Bankruptcy of Yellow Poplar
                              Lumber Company, Bankrupt.

64/477

State of Virginia,
County of Norfolk.

I, Theresa Walsh, a Notary Public for the State of Virginia, do certify that
Gallie Friend, Trustee, in Bankruptcy of Yellow Poplar Lumber Company, Bankrupt, whose
name is signed to the foregoing Deed, bearing date on the 21st day of September, 1929,
has this day acknowledged the same before me, in the County of Norfolk, State of Virginia.
Given under my hand and Notarial Seal this 21st day of September, 1929.

My commission expires October 28th, 1932.

                                        Theresa Walsh
                                        Notary Public for Virginia.

The foregoing Deed is approved as to the form this 21st day of September, 1929.

                                        E.M. Blythe
                                        Referee in Bankruptcy.

Virginia, Buchanan County, to-wit:

In the Clerk's Office of the County and State aforesaid, the 11th day of November,
1929, at 5:00 P.M., the foregoing writing was presented and admitted to record, together
with the annexed certificate of acknowledgment recorded in Deed Book NO. 64, page 473 etseq.

                    TESTE: GEO. W. MULLINS,   CLERK,
                    BY J.P. Looney   D.C.

# EXHIBIT B

65/593



KNOW ALL MEN BY THESE PRESENTS THAT

WHEREAS, upon the involuntary petition in bankruptcy filed in the United States District Court for the Western District of South Carolinia, the Yellow Poplar Lumber Company, a corporation, was thereafter duly adjudged bankrupt, whereupon the administration of said bankrupt's estate was duly referred to one of the referees of said court in bankruptcy, before such proceedings thereafter were had and that the undersigned was duly appointed trustee of said bankrupt's estate and effects and thereupon duly qualified, and has ever since acted as such trustee; and

WHEREAS, such proceedings were had that an order was duly made and entered aurhorizing and directing the undersigned, as such trustee, to sell, subject to the approval of the court, the real estate hereinafter described and conveyed, at public auction, free and clear of said claims of liens and other interests in said real estate, the said claims of liens and rights therein to be transferred to the proceeds of the sale thereof; and

WHEREAS, after having first complied in each and every respect with the order of sale, said sale was held at Grundy, Virginia, on October 1, 1930, and said real estate was sold clear and free of said claims of liens and interests, and the highest and best bid was made by G.C. Jackson for the sum of Three Thousand ($3,000.00) Dollars, clear and free of said claims of liens interests; and

WHEREAS, said sale was duly reported to the court, which approved the same and confirmed said sale by order duly made, and directed the undersigned, as such trustee, to

65/594

make and deliver to the said C.G. Jackson, upon compliance by him with the terms of said sale, the title to said land; and

WHEREAS, the said C.G. Jackson has fully complied in all respects with the terms of the said sale:

NOW, THEREFORE, I, the undersigned trustee in bankruptcy of said Yellow Poplar Lumber Company, by virtue of the title and powers in me vested by the provisions of the Bankruptcy Act and by said orders of court authorizing said sale and confirming the same, and for and in consideration of the sum of Three Thousand ($3,000.00) Dollars, to me in hand paid by the said C.G. Jackson the receipt of which is hereby acknowledged, do hereby give, grant, bargain, sell, set over and convey, unto the said C.G. Jackson, his heirs, executors and assigns, free and clear of all claims of liens and interests, all my right, title and interest in and to the following described real estate, to-wit:

All that certain tract or parcel of land, situate, lying and being in Buchanan County, Virginia, on the waters of Big Paw Paw Creek of Russell Fork River, containing one thousand (1,000) acres, more or less, but sold by the boundary and not by the acre, and being the same tract or parcel of land heretofore obtained by the Yellow Poplar Lumber Company, a corporation, from Excelsior Coal and Lumber Corporation, by deed dated January 5, 1905, and recorded in the Clerk's Office of the Circuit Court of Buchanan County, Virginia, in Deed Book  , page ___, and in the Clerk's Office of the Circuit Court of Dickenson County, Virginia, in Deed Book NO. 25, page 476, et seq., being set out and described in said deed by metes and bounds as Tract NO. 10, to which deed special reference is here made for a more particular description of said tract of land.

To have and to hold the same to said C.G. Jackson, his heirs executors and assigns, forever, as fully and completely as I, the undersigned trustee in bankruptcy, by virtue of the powers and authority so vested in me, might or should sell and convey same.

In witness whereof, I, as such trustee, have hereunto set my hand and seal this the 16th day of October, 1930.

                                        Gallie Friend      (SEAL)
                                        as trustee of the estate of
                                        Yellow Poplar Lumber Company,
                                        Bankrupt.

    Witness:
J.R. Davis
W.M. Phipps


    State of Virginia,
    City of Norfolk, to-wit:

    I, Lola Palmer, a Notary Public for the City aforesaid, in the State of Virginia, do hereby certify that Gallie Friend, as Trustee of the estate of Yellow Poplar Lumber Company, Bankrupt, whose name is signed to the foregoing deed bearing date on the 16th day of October, 1930, this day acknowledged the same before me in my City aforesaid.

    My commission expires February 9, 1932.

    Given under my hand this 16th day of October, 1930.

                                        Lola Palmer
                                        Notary Public.

Virginia, Buchanan County, to-wit:

In the Clerk's office of the County and State aforesaid, the 14th day of November, 1930, at 10:00 A.M., the foregoing writing was presented and admitted to record, together with the annexed certificate of acknowledgment recorded in Deed Book No. 65, page 593.

TESTE: GEO. W. MULLINS,   CLERK,

BY _W. M. Hibbitts_ D.C.

65/595

# EXHIBIT C

Case 1:13-cv-00062-JPJ-PMS    Document 176-3    Filed 04/28/14    Page 2 of 3    Pageid#: 1880





WATERSHED OF LEVISA FORK (RIVER), DISMAL CREEK AND THEIR TRIBUTARIES IN BUCHANAN COUNTY VIRGINIA

Levisa Fork (River) Watershed in Buchanan County
Russell Fork Subwatershed
Dismal Creek Subwatershed
2012 TIGER/Line® Roads
National Hydrography Dataset 1:24K

Watershed Hydrology Consultants
James D. Gregory, Ph.D., CPSS, PWS
Southern Geospatial Services
Sean Taylor, GISP
March 6, 2013

# EXHIBIT D

## C.G. Jackson Record Owner' ...ells Claimed by Plum Creek

| Well Number | Yellow Poplar Pooled % | Other Record CBM/ Gas Owner/Lessee | Other Pooled Percentage | Total % Claimed by Plum Creek | Successor to Record Owner | Other Conflicting CBM Owner |
|---|---|---|---|---|---|---|
| Haysi-142 | 1.14 | Furl & Lydia Newberry | 29.45 | 30.59 | Lydia Victoria (Vickie) Newberry | Range Resources |
| VC(70)2914 | 99.71 | Willard Newberry<br>Furl Newbury | 0.24<br>0.05 | 100 | Donna Vest/Marlene McCall<br>Lydia Victoria (Vickie) Newberry | Clinchfield Coal Co.<br>Clinchfield Coal Co. |
| VC502913 | 23.92 | Willard Newberry<br><br>Mary L. McGlothlin | 59.57<br><br>16.51 | 100 | Donna Vest/Marlene McCall<br>Donald McGlothlin, Jr<br>Leah McGlothlin<br>Kevin McGlothlin<br>Mary Louise Burton | Range Resources |
| VC535686 | 29.05 | Furl Newberry<br>Willard Newberry | 63.65<br>7.3 | 100 | Lydia Victoria (Vickie) Newberry<br>Donna Vest/ Marlene McCall | Pine Mountain Oil and Gas<br>Pine Mountain Oil and Gas |
| VCI531472 | 29.05 | Furl Newberry<br>Willard Newberry | 63.65<br>7.3 | 100 | Lydia Victoria (Vickie) Newberry<br>Donna Vest/ Marlene McCall | Range Resources<br>Range Resources |
| VC537061 | 0 | Furl Newberry<br>William G. Baker, et als<br>Charles Bartlett, M.D. (Lessee)<br>Chesapeake Appalachia, LLC (Lessee)<br>Willard Newberry | 68.63<br><br><br>0.02<br>0.02 | 68.67 | Lydia Victoria (Vickie) Newberry<br>William B. Baker, Jr., Trustee<br>Edwin F. Legard, Jr.<br>Elizabeth Anne Cox, Trustee<br>Dona Vest/Marlene McCall | Range Resources<br><br>Range Resources<br>Range Resources |
| VCI538710 | 23.92 | Willard Newberry<br><br>Mary L. McGlothlin | 59.57<br><br>16.51 | 100 | Donald McGlothlin, Jr.<br>Leah McGlothlin<br>Kevin McGlothlin<br>Mary Louise Burton | Range Resources<br><br>Range Resources |
| VC537063 | 1.87 | Mary L. McGlothlin<br>Willard Newberry<br>William G. Baker, et als<br>Charles Bartlett, M.D. (Lessee)<br>Chesapeake Appalachia, LLC (Lessee) | 49.67<br>45.77<br>2.69 | 100 | Donald McGlothlin, Jr<br>Leah McGlothlin<br>Kevin McGlothlin<br>Mary Louise Burton<br>Donna Vest/Marlene McCall<br>William B. Baker, Jr., Trustee<br>Edwin F. Legard, Jr.<br>Elizabeth Anne Cox, Trustee | Range Resources<br>Range Resources<br>Range Resources |
| VC536323 | 0 | Willard Newberry<br>Furl Newberry<br>William G. Baker, et als<br>Charles Bartlett, M.D. (Lessee)<br>Chesapeake Appalachia, LLC (Lessee) | 86.92<br>12.3<br>0.63 | 99.85 | Dona Vest/Marlene McCall<br>Lydia Victoria (Vickie) Newberry<br>William B. Baker, Jr., Trustee<br>Edwin F. Legard, Jr.<br>Elizabeth Anne Cox, Trustee | Range Resources<br>Range Resources<br>Range Resources |

# EXHIBIT E

## Drilling Units/Wells Cl...ed by Plum Creek

| Well Number | Unit Operator | Yellow Poplar Pooled % | Other Record CBM/Gas Owner/Lessee | Other Pooled Percentage | Total % Claimed by Plum Creek | Successor to Record Owner | Other Conflicting CBM Owner |
|---|---|---|---|---|---|---|---|
| CNR-825518 | CNR | 1.54 (conventional gas) | None | | 1.54 | | None Listed |
| Haysi-141 | Range Resources | 0.43 | | | 0.43 | | Range Resources |
| Haysi-142 | Range Resources | 1.14 | Furl & Lydia Newberry | 29.45 | 30.59 | Lydia Victoria (Vickie) Newberry | Range Resources |
| V536121 | EQT | 60.41 (conventional gas) | None | | 60.41 | | None |
| VC(70)2914 | EQT | 99.71 | Willard Newberry | 0.24 | 100 | Donna Vest/Marlene McCall | Clinchfield Coal Co. |
| | | | Furl & Lydia Newberry | 0.05 | | Lydia Victoria (Vickie) Newberry | Clinchfield Coal Co. |
| VC502913 | EQT | 23.92 | Willard Newberry | 59.57 | 100 | Donna Vest/Marlene McCall | Range Resources |
| VC502915 | EQT | 100 | Mary L. McGlothlin | 16.51 | 100 | Donald McGlothlin, Jr / Leah McGlothlin / Kevin McGlothlin / Mary Louise Burton | Range Resources |
| VC502918 | EQT | No Information | | | 100 | | Pine Mountain Oil & Gas |
| VC531475 | EQT | 9.82 | | | 9.82 | | Range Resources |
| VC535684 | EQT | 100 | | | 100 | | Pine Mountain Oil & Gas |
| VC535685 | EQT | 100 | | | 100 | | Pine Mountain Oil & Gas |
| VC535686 | EQT | 29.05 | Furl Newberry | 63.65 | 100 | Lydia Victoria (Vickie) Newberry | Pine Mountain Oil & Gas |
| | | | Willard Newberry | 7.3 | | Donna Vest/ Marlene McCall | Pine Mountain Oil & Gas |
| VC536612 | EQT | 100 | | | 100 | | Pine Mountain Oil & Gas |
| VC536613 | EQT | 100 | | | 100 | | Pine Mountain Oil & Gas |
| VC536614 | EQT | 100 | | | 100 | | Pine Mountain Oil & Gas |
| VC536615 | EQT | 100 | | | 100 | | Pine Mountain Oil & Gas |
| VC536618 | EQT | 100 | | | 100 | | Pine Mountain Oil & Gas |
| VC536619 | EQT | 100 | | | 100 | | Pine Mountain Oil & Gas |
| VC536620 | EQT | 75.63 | | | 75.63 | | Pine Mountain Oil & Gas |
| VC536622 | EQT | 94.06 | | | 94.06 | | Pine Mountain Oil & Gas |
| VC536623 | EQT | 100 | | | 100 | | Pine Mountain Oil & Gas |
| VC536624 | EQT | 100 | | | 100 | | Pine Mountain Oil & Gas |
| VC536626 | EQT | 100 | | | 100 | | Pine Mountain Oil & Gas |
| VC536627 | EQT | 94.69 | | | 94.69 | | Pine Mountain Oil & Gas |
| VC536628 | EQT | 93.64 | | | 93.64 | | Pine Mountain Oil & Gas |
| VC536629 | EQT | 47.97 | | | 47.97 | | Pine Mountain Oil & Gas |
| VC536635 | EQT | 91.29 | | | 91.29 | | Range Resources |
| VC536880 | EQT | 34 | | | 34 | | Range Resources |
| VC537048 | EQT | 100 | | | 100 | | Pine Mountain Oil & Gas |
| VC537049 | EQT | 100 | | | 100 | | Pine Mountain Oil & Gas |
| VC537050 | EQT | 100 | | | 100 | | Pine Mountain Oil & Gas |
| VC537051 | EQT | 100 | | | 100 | | Pine Mountain Oil & Gas |
| VC537052 | EQT | 97.77 | | | 97.77 | | Pine Mountain Oil & Gas |
| VC537053 | EQT | 100 | | | 100 | | Range Resources |
| VC537054 | EQT | 100 | | | 100 | | Range Resources |
| VC537055 | EQT | 53.12 | | | 53.12 | | Range Resources |
| VC537056 | EQT | 70.92 | | | 70.92 | | Range Resources |
| VC537057 | EQT | 44.47 | | | 44.47 | | Range Resources |
| VC537059 | EQT | 100 | | | 100 | | Pine Mountain Oil & Gas |
| VC537060 | EQT | 92.68 | | | 92.68 | | Pine Mountain Oil & Gas |
| VC537303 | EQT | 17.73 | | | 17.73 | | Pine Mountain Oil & Gas |
| VC537304 | EQT | 40.66 | | | 40.66 | | Range Resources |
| VC538563 | EQT | 75.63 | | | 75.63 | | Range Resources |
| VC531472 | EQT | 29.05 | Furl Newberry | 63.65 | 100 | Lydia Victoria (Vickie) Newberry | Range Resources |
| | | | Willard Newberry | 7.3 | | Donna Vest/ Marlene McCall | Range Resources |
| VC531533 | EQT | 100 | | | 100 | | Range Resources |
| VC531535 | EQT | 100 | | | 100 | | Range Resources |
| VC531539 | EQT | 94.06 | | | 94.06 | | Range Resources |
| VC538296 | EQT | 53.12 | | | 53.12 | | Range Resources |

| ID | Operator | Value | Lessor | Value | Value | Owners | Assignee |
|---|---|---|---|---|---|---|---|
| VCI538691 | JT | 70.99 | | | 70.99 | | Range Re...rces |
| VCI539006 | JT | 34 | | | 34 | | Range F...ces |
| VCI539008 | EQT | No Information | | | | | Range Resources |
| VCI539472 | EQT | 100 | | | 100 | | Range Resources |
| VCI539475 | EQT | 100 | | | 100 | | Range Resources |
| VCI539476 | EQT | 99.5 | | | 99.5 | | Range Resources |
| VCI539480 | EQT | 100 | | | 100 | | Range Resources |
| VCI539481 | EQT | 100 | | | 100 | | Pine Mountain Oil & Gas |
| VCI539482 | EQT | 100 | | | 100 | | Range Resources |
| VCI539485 | EQT | 100 | | | 100 | | Pine Mountain Oil & Gas |
| VCI539486 | EQT | 100 | | | 100 | | Range Resources |
| VCI539490 | EQT | 94.69 | | | 94.69 | | Range Resources |
| VCI539491 | EQT | 93.64 | | | 93.64 | | Range Resources |
| 900004 | Range Resources | 9.75 (conventional gas) | None | | 9.75 | None | None |
| VCI537061 | EQT | 0 | Furl Newberry | 68.63 | 68.67 | Lydia Victoria (Vickie) Newberry | Range Resources |
| | | | William G. Baker, et als; Charles Bartlett, M.D. (Lessee); Chesapeake Appalachia, LLC (Lessee) | 0.02 | | William B. Baker, Jr., Trustee; Edwin F. Legard, Jr.; Elizabeth Anne Cox, Trustee | Range Resources |
| | | | Willard Newberry | 0.02 | | Donna Vest/Marlene McCall | Range Resources |
| VCI538710 | EQT | 23.92 | Willard Newberry | 59.57 | 100 | Donna Vest/Marlene McCall | Range Resources |
| | | | Mary L. McGlothlin | 16.51 | | Donald McGlothlin, Jr.; Leah McGlothlin; Kevin McGlothlin; Mary Louise Burton | Range Resources |
| VC537063 | EQT | 1.87 | Mary L. McGlothlin | 49.67 | 100 | Donald McGlothlin, Jr; Leah McGlothlin; Kevin McGlothlin; Mary Louise Burton | Range Resources |
| | | | Willard Newberry | 45.77 | | Donna Vest/Marlene McCall | Range Resources |
| | | | William G. Baker, et als; Charles Bartlett, M.D. (Lessee); Chesapeake Appalachia, LLC (Lessee) | 2.69 | | William B. Baker, Jr., Trustee; Edwin F. Legard, Jr.; Elizabeth Anne Cox, Trustee | Range Resources |
| VC537058 | EQT | 67.53 | | | 67.53 | | Range Resources |
| VC536616 | EQT | 99.5 | | | 99.5 | | Pine Mountain Oil & Gas |
| VCI539479 | EQT | 100 | | | 100 | | Range Resources |
| VCI539473 | EQT | 100 | | | 100 | | Range Resources |
| VCI539484 | EQT | 100 | | | 100 | | Range Resources |
| VCI539487 | EQT | 100 | | | 100 | | Range Resources |
| VCI539488 | EQT | 97.77 | | | 97.77 | | Range Resources |
| VCI538739 | EQT | 91.27 | | | 91.27 | | Range Resources |
| VCI538630 | EQT | 47.97 | | | 47.97 | | Range Resources |
| VCI536636 | EQT | 31.96 | Willard Newberry | 86.92 | 31.96 | Donna Vest/Marlene McCall | Range Resources |
| VC536323 | EQT | 0 | Furl Newberry | 12.3 | 99.85 | Lydia Victoria (Vickie) Newberry | Range Resources |
| | | | William G. Baker, et als; Charles Bartlett, M.D. (Lessee); Chesapeake Appalachia, LLC (Lessee) | 0.63 | | William B. Baker, Jr., Trustee; Edwin F. Legard, Jr.; Elizabeth Anne Cox, Trustee | Range Resources |

EXHIBIT F

WATERSHED OF LEVISA FORK (RIVER), DISMAL CREEK AND
THEIR TRIBUTARIES IN BUCHANAN COUNTY VIRGINIA
SHOWING LOCATION OF WELLS CLAIMED BY PLUM CREEK

Digital Elevation Models (DEMs) acquired from the USGS National Map Server.

Watersheds delineated with ArcHydro 9 for ArcGIS v9.2 with 30 M DEMs (Levisa) and 10 M DEMs (Russell, Dismal).

Projection information and 50,000 ft grid tick marks NAD 1983 State Plane Virginia South FIPS 4502 (Ft) Coordinate System.

Levisa Fork (River) Watershed in Buchanan County

Russell Fork: Subwatershed

Dismal Creek: Subwatershed

Wells Claimed By Plum Creek

2012 TIGER/Line® Roads

National Hydrography Dataset 1:24K

Watershed Hydrology Consultants
James D. Gregory, Ph.D., CPSS, PWS
Southern Geospatial Services
Sam Taylor, GISP
March 22, 2013

# EXHIBIT G

BEFORE THE VIRGINIA GAS AND OIL BOARD

| | | |
|---|---|---|
| Applicant: | Equitable Production Company | ) |
| | | ) |
| Relief Sought: | Pooling VC-535685 | ) |
| | | ) |
| Legal Description: | Pine Mountain Oil & Gas, Inc. | ) Docket Number: |
| | 2068.22 Acre Tract, Tract T2-42 | ) VGOB-06/07/18-1675 |
| | Prater District | ) |
| | Prater Quadrangle | ) |
| | Buchanan County, Virginia | ) |
| | | ) |
| | (See Exhibit "A" For Specific | ) |
| | Description) | ) |

## APPLICATION

1.      **Parties:**  Applicant herein is Equitable Production Company, whose address for the purposes hereof is 1710 Pennsylvania Ave., P.O. Box 2347, Charleston, West Virginia 25328. The attorney for Applicant is James E. Kaiser, WILHOIT & KAISER, whose address is 220 Broad Street, Kingsport, Tennessee, 37660, Telephone:  (423) 578-3838.  The unleased entities or persons are listed on Exhibit B-3, attached hereto and made a party hereto. Set forth in Exhibit B is the name and last-known address of each owner of record identified by Applicant as having an interest in the oil, gas and coalbed methane underlying the unit described in Exhibit A, attached hereto and made part hereof.  Each of the unleased individuals named in Exhibit B-3 is being made a party if living; if any such individual is deceased, then the unknown heirs, executors, administrators, devisees, trustees and assignees, both immediate and remote, of any such deceased individual are made parties herein. Each of the unleased entities listed in Exhibit B-3 that is a corporation is being made a party if such entity continues to have legal existence, and if any such corporation is dissolved, then the unknown successors, trustees, and assigns, both immediate and remote, of such dissolved corporation are made parties herein.  Each of the unleased entities listed in Exhibit B-3 that is an unincorporated association is being made a party if such entity continues to have legal existence, and if any such unincorporated association is dissolved or otherwise not in existence, then the unknown successors, trustees and assigns, both immediate and remote, of such unincorporated association are made parties herein.

2.      **Allegation of Facts:**  Applicant is the owner of the right to develop and produce oil, gas and coalbed methane from all formations, from the surface to total depth drilled within the Nora Coalbed Gas Field and underlying the lands described on Exhibit A attached hereto and made a part hereof and to appropriate the oil, gas and coalbed methane produced therefrom.

8:28-cv-01101-BHH    Date Filed 04/07/15    Entry Number 1-2    Page 77 of 115
Case 1:13-cv-00062-JPJ-PMS    Document 176-7    Filed 04/28/14    Page 3 of 41    Pageid#:
1891

(a)     Applicant has proposed a plan of development and operation of the formations
        underlying the drilling unit involved herein (described and depicted on Exhibit
        Attached hereto and made a part hereof) and has proposed to commence such plan
        of development and operation of such unit by a well, designated as well number
        VC-535685 under such plan in the lands involved herein so as to produce oil, gas
        and coalbed methane from the proposed unit.

(b)     A Well work permit for well number VC-535685 is currently or is anticipated to be
        pending before the Department of Mines, Minerals and Energy.

(c)     Applicant has exercised due diligence to locate each of the oil, gas and coalbed
        methane interest owners named herein at Exhibit B and has made a bona fide effort
        to reach an agreement with all unleased parties as to pooling their interest for the
        development and operation of the well involved herein.  Simultaneously with the
        filing of this application, Applicant has provided notice to each of the unleased
        parties set forth in Exhibit B-3 pursuant to the provisions of § 45.1-361.19 of the
        Virginia Code Annotated. Applicant hereby notifies the Board that where the
        identity or location of any person is shown as "unknown" on Exhibit E, then
        Applicant is unable to provide such person with written notice of the application
        herein.  The interest of all unleased persons in the Formations underlying the drilling
        unit for well number VC-535685 should be pooled for the development and
        operation thereof.

(d)     Applicant proposes to drill at the permitted location to an approximate depth of
        2430 feet on the Subject Lands to test for oil, gas and coalbed methane in the
        Subject Formations, including all Pennsylvanian aged coals from the top of the
        Raven including but not limited to: Jawbone, Greasy Creek, X-Seam, Poco 6, Poco
        4, Poco 3 and any unnamed coal seams and other associated formations known as
        the Nora Coalbed Gas Field. Applicant estimates the cost for a well to said depth to
        be $354,173.00 for a well completed for production. Exhibit C, attached hereto and
        made a part hereof, is Applicant's signed Detailed Well Estimate ("DWE") which
        shows the estimated cost of drilling, completing and equipping said well.

(e)     The estimated production over the life of the proposed well is 230 million cubic
        feet.  These figures concerning estimated production and the amount of reserves are,
        however, estimates only that are not based upon actual production and should not be
        relied upon for any purpose.

3.      Legal Authority:     The relief sought by this Application is authorized by Virginia Code
Annotated § 45.1-361.21 et seq. and 4 VAC 25-160-70 et seq.

8:28-cv-01101-BHH    Date Filed 04/07/15    Entry Number 1-2    Page 78 of 115
Case 1:13-cv-00062-JPJ-PMS    Document 176-7    Filed 04/28/14    Page 4 of 41    Pageid#:
1892

4.    <u>Relief Sought:</u> Applicant request the Virginia Gas and Oil Board to enter an order pooling all unleased interests or estates of all persons or entities owning oil, gas and coalbed methane interests in the Formations underlying the tracts encompassed by the drilling unit supporting well number VC-535685, and (I) authorizing the drilling and operation of a well for the production of oil, gas and coalbed methane from the pooled acreage;  (II) designating Applicant as the party authorized to drill and operate such well;  (III) prescribing the time, manner, and other conditions under which unleased parties owning an interest in the oil, gas and coalbed methane may elect to participate in the operation of such well, or to exercise their rights of election under the applicable statutes;  (IV) providing that all reasonable costs and expenses of drilling, completing, equipping, operating, plugging and abandoning such well shall be borne, and all production therefrom, shared, by all participating parties in the proportion which the acreage in the pooled tracts owned or under lease to each such participating  party bears to the total acreage in such unit; and, (V) making provision for the payment of all reasonable costs of the operation, including a reasonable supervision fee, to the Applicant by all parties who elect to participate therein or who elect to be carried interest owners.

DATED this 16th day of June, 2006.

EQUITABLE PRODUCTION COMPANY

James E. Kaiser

WILHOIT & KAISER
220 Broad Street
Kingsport, Tennessee  37660
(423) 578-3838

VERIFICATION

The foregoing Application to the best of <u>my</u> knowledge, information and belief is true and correct.

James E. Kaiser

WILHOIT & KAISER

**EQUITABLE PRODUCTION**

**Equitable Production Comp**

1710 Pennsylvania Avenue
Charleston, WV 25328
(304) 348-3800

## AUTHORIZATION FOR EXPENDITURE

| Well Name: | 535685  VC-535685 (535685) | | AFE Number: | 2175356851A |
| Operator: | | | AFE Date: | 6/2/2006 |
| AFE Group: | BigStoneGap 2006 | AFE Type: Drilling | Job Start Date: | |
| Prospect: | | | County, State: | Buchanan, VA |
| JO/O/O-STR: | / / - / / | | Field: | |
| Location: | | | | |
| Well Type: | | Depth: | 0 | Prep. By: | |

| AFE Number | AFE Date | AFE Gross | | | AFE Net | | |
|---|---|---|---|---|---|---|---|
| | | Drilling | Completion | Total | Drilling | Completion | Total |
| 2175356851A | 6/2/2006 | $143,982 | $209,691 | $353,673 | $0 | $0 | $0 |

| | Intangible | Notes | Drilling | Dry Hole | Completion | Total |
|---|---|---|---|---|---|---|
| 180013 | CONTRACT FOOTAGE | 2430' @ $20 | $48,600 | $48,600 | $0 | $48,600 |
| 180015 | DAYWORK | | $1,050 | $1,050 | $0 | $1,050 |
| 180030 | CONTRACTOR SETUP | | $3,000 | $3,000 | $0 | $3,000 |
| 180049 | LEGAL SERVICES, TITLE CURATI | NNA | $1,500 | $1,500 | $0 | $1,500 |
| 180061 | GPS, SURVEY, WELL PLAT, PERMI | GBH | $4,900 | $4,900 | $0 | $4,900 |
| 180093 | LOCATION PIT LINERS | | $3,000 | $3,000 | $0 | $3,000 |
| 180094 | LOCATION CONSTRUCTION, DOZ | | $34,000 | $34,000 | $0 | $34,000 |
| 180096 | ROCKING, CULVERTS & STONE L | | $14,000 | $14,000 | $0 | $14,000 |
| 180111 | PIT TREATMENT/RESTORATION/ | | $9,000 | $9,000 | $0 | $9,000 |
| 180180 | OPEN HOLE LOGGING | | $4,900 | $4,900 | $0 | $4,900 |
| 180231 | CEMENTING – SURFACE CASING ( | | $7,300 | $7,300 | $0 | $7,300 |
| 180720 | OPERATOR OVERHEAD | | $4,500 | $4,500 | $0 | $4,500 |
| 180733 | LAND CONTRACTOR COST | NNA/GBH | $3,000 | $3,000 | $0 | $3,000 |
| 181021 | SERVICE RIG / COILED TUBING & | | $0 | $0 | $5,000 | $5,000 |
| 181071 | PERFORATING, CASED HOLE LOG | | $0 | $0 | $8,000 | $8,000 |
| 181101 | CEMENTING - PROD. CASING (FL | | $0 | $0 | $12,300 | $12,300 |
| 181122 | SERVICE COMPANY, NITROGEN, | | $0 | $0 | $48,700 | $48,700 |
| 181141 | TANKS/PITS/DOZER-COMPLETIO | | $0 | $0 | $7,000 | $7,000 |
| 181151 | PIPELINE CONSTRUCTION & REC | 2923'4" | $0 | $0 | $36,393 | $36,393 |
| 181161 | WATER HAULING IN-COMPLETIO | | $0 | $0 | $3,000 | $3,000 |
| 181202 | WELLHEAD TIE IN. LABOR, ETC. | Shupe | $0 | $0 | $4,000 | $4,000 |
| 181270 | ENVIRONMENTAL COSTS | | $0 | $0 | $500 | $500 |
| 181701 | CONSULTING SER, SUPERVION | | $0 | $0 | $700 | $700 |
| 181971 | REGULAR WAGES | | $1,250 | $1,250 | $0 | $1,250 |
| | **Total  Intangible Cost :** | | **$140,000** | **$140,000** | **$125,593** | **$265,593** |

| | Tangible | Notes | Drilling | Dry Hole | Completion | Total |
|---|---|---|---|---|---|---|
| 182019 | PRODUCTION CASING:  NEW | | $0 | $0 | $14,622 | $14,622 |
| 182022 | CASING:  CONDUCTOR & DRIVE | | $500 | $500 | $0 | $500 |
| 182030 | SURFACE CASING | | $3,482 | $3,482 | $0 | $3,482 |
| 182036 | NEW TUBING | | $0 | $0 | $8,311 | $8,311 |
| 182051 | CASING HEAD, TUBINGHEAD, WE | | $0 | $0 | $1,700 | $1,700 |
| 182055 | VALVES & FITTINGS | Shupe | $0 | $0 | $2,850 | $2,850 |
| 182060 | GATHERING LINES | | $0 | $0 | $12,899 | $12,899 |
| 182061 | PIPELINE  FITTINGS & TIE IN FITT | | $0 | $0 | $6,000 | $6,000 |
| 182079 | MEASUREMENT VALVES & FITTI | | $0 | $0 | $3,500 | $3,500 |
| 182099 | NEW SEPARATOR, SEPARATOR P | | $0 | $0 | $1,700 | $1,700 |
| 182131 | TANK & TANK HCP FITTINGS, TA | | $0 | $0 | $6,500 | $6,500 |
| 182151 | ARTIFICIAL LIFT  SURFACE VALV | Shupe/L.Neece | $0 | $0 | $22,400 | $22,400 |
| 182161 | SUCKER RODS & DOWNHOLE PU | MB-OK | $0 | $0 | $4,116 | $4,116 |
| | **Total  Tangible Cost :** | | **$3,982** | **$3,982** | **$84,598** | **$88,580** |
| | **Total  AFE  Costs :** | | **$143,982** | **$143,982** | **$210,191** | **$354,173** |

*Powered by Production Access*    6/9/2006 10:57 AM

**EQUITABLE PRODUCTION**

**Equitable Production Comp**

*1710 Pennsylvania Avenue*
*Charleston, WV 25328*
*(304) 348-3800*

## AUTHORIZATION FOR EXPENDITURE

| | | | |
|---|---|---|---|
| Well Name : | 535685  VC-535685 (535685) | AFE Number : | 2175356851A |
| Operator : | | AFE Date : | 6/2/2006 |
| AFE Group : | BigStoneGap 2006 | AFE Type : Drilling | Job Start Date : |
| Prospect : | | County, State : | Buchanan, VA |
| Q/Q/Q-S/T/R : | / / - / / | Field : | |
| Location : | | | |
| Well Type : | | Depth : | 0 | Prep. By : |

**Approved by:**

_ML. Pritt_                    Date: 6-9-06

# EXHIBIT "B"
## VC-535685

| TR | LESSOR | LEASE STATUS | INTEREST WITHIN UNIT | GROSS ACREAGE IN UNIT |
|---|---|---|---|---|
| | | **Gas Estate Only** | | |
| 1 | Gallie Friend, Trustee of the Estate of Yellow Poplar Lumber Company Unknown | Unleased | 100.000000% | 58.7700 |
| | **TOTAL GAS ESTATE** | | **100.000000%** | **58.7700** |
| | Percentage of Unit Leased | | 0.000000% | |
| | Percentage of Unit Unleased | | 100.000000% | |
| | Acreage in Unit Leased | | | 0.0000 |
| | Acreage in Unit Unleased | | | 58.7700 |
| | | **Coal Estate Only** | | |
| 1 | Pine Mountain Oil & Gas, Inc. ATTN: Jerry Grantham P.O. Box 2136 Abingdon, VA. 24212 | Leased 241640L T2-42 | 100.000000% | 58.7700 |
| | **TOTAL COAL ESTATE** | | **100.000000%** | **58.7700** |
| | Percentage of Unit Leased | | 100.000000% | |
| | Percentage of Unit Unleased | | 0.000000% | |
| | Acreage in Unit Leased | | | 58.7700 |
| | Acreage in Unit Unleased | | | 0.0000 |



# WELL LOCATION PLAT

COMPANY __EQUITABLE PRODUCTION CO.__    WELL NAME OR NUMBER __VC-535685__

TRACT NO. __T2-42__    QUADRANGLE __Prater__

DISTRICT __Prater__

WELL COORDINATES (VIRGINA STATE PLANE 27)    N 328,313.32    E 930,136.80

ELEVATION __2082.99__    METHOD USED TO DETERMINE ELEVATION: __GPS & TRIG.__

COUNTY __Buchanan__    SCALE: __1" = 400'__    DATE __5-26-06__

THIS PLAT IS A NEW PLAT __X__ ; AN UPDATED PLAT _____ ; OR A FINAL LOCATION PLAT _____

✛ DENOTES THE LOCATION OF A WELL ON UNITED STATES TOPOGRAPHIC MAPS, SCALE 1 TO 24,000, LATITUDE AND LONGITUDE LINES BEING REPRESENTED BY BORDER LINES AS SHOWN.

690.87
Form DGO-GO-7
Rev. 1-98

LICENSED LAND SURVEYOR    (AFFIX SEAL)

## EXHIBIT "B-3"
## VC-535685

| TRACT | LESSOR | LEASE STATUS | INTEREST WITHIN UNIT | GROSS ACREAGE IN UNIT |
|-------|--------|--------------|----------------------|----------------------|
| | **Gas Estate Only** | | | |
| 1 | Gallie Friend, Trustee of the Estate of Yellow Poplar Lumber Company Unknown | Unleased | 100.000000% | 58.7700 |
| | **TOTAL UNLEASED** | | **100.000000%** | **58.7700** |

# EXHIBIT "E"
## VC-535685

| TR | LESSOR | LEASE STATUS | INTEREST WITHIN UNIT | GROSS ACREAGE IN UNIT |
|----|--------|--------------|----------------------|------------------------|
| | | **Gas Estate Only** | | |
| 1 | Gallie Friend, Trustee of the Estate of Yellow Poplar Lumber Company Unknown | Unleased | 100.000000% | 58.7700 |
| | | **Coal Estate Only** | | |
| 1 | Pine Mountain Oil & Gas, Inc. ATTN: Jerry Grantham P.O. Box 2136 Abingdon, VA 24212 | Leased 241640L T2-42 | 100.000000% | 58.7700 |

NOTICE OF HEARING BEFORE THE DEPARTMENT OF MINES, MINERALS &
ENERGY, DIVISION OF GAS AND OIL
Docket Number VGOB-06/07/18-1675
Well Number VC-535685

To:     All persons, their known and unknown heirs, executors, administrators, devisees, assigns
and successors, owning an interest in the gas, oil, coal or minerals underlying Pine Mountain Oil &
Gas Inc., 2068.22 Acre Tract, Tract T2-42 and adjacent tracts situated approximately 14,500 feet
Northeast of the intersection of Routes 606 and 619 on the waters of Low Gap Branch, and
approximately 4.27 miles Northeast of Cannady in the Prater District, Prater Quadrangle, in
Buchanan County, Virginia.

     NOTICE IS HEREBY GIVEN that Equitable Production Company, 1710 Pennsylvania
Ave., P.O. Box 2347, Charleston, West Virginia 25328, is requesting that the Virginia Gas and Oil
Board (hereinafter "Board") issue an order pooling all the rights, interests, and estates pursuant to
Virginia Code Ann. § 45.1-361.1 et seq. in regard to the drilling, development and production of
oil, gas and coalbed methane from drilling Unit VC-535685, containing approximately 58.77 acres,
located on the above-referenced tracts.

     NOTICE IS FURTHER GIVEN that this cause has been set for hearing and the taking of
evidence before the Board at 9:00 a.m. on July 18, 2006, at the Southwest Virginia Higher
Education Center, Abingdon, Virginia.

     All interested persons may attend this hearing, with or without an attorney, and offer
evidence or state any comments you have.  For further information, contact the Virginia Gas and
Oil Board, State Gas and Oil Inspector, Department of Mines, Minerals and Energy, Division of
Gas and Oil, P.O. Box 1416, Abingdon, Virginia, 24212, (276) 676-5423 or the Applicant at the
address shown above.

8:28-cv-01101-BHH    Date Filed 04/07/15    Entry Number 1-2    Page 86 of 115
Case 1:13-cv-00062-JPJ-PMS    Document 176-7    Filed 04/28/14    Page 12 of 41    Pageid#:
1900

BEFORE THE VIRGINIA GAS AND OIL BOARD

| | | |
|---|---|---|
| Applicant: | Equitable Production Company | ) |
| | | ) |
| | | ) |
| Relief Sought: | Pooling | ) |
| | | ) |
| Location: | See Exhibit "A" | ) Docket No. |
| Well Number: | VC-535685 | ) VGOB-06/07/18-1675 |
| | | ) |
| Legal | | ) |
| Description: | Pine Mountain Oil & Gas, Inc. | ) |
| | 2068.22 Acre Tract, Tract T2-42 | ) |
| | Prater District | ) |
| | Prater Quadrangle | ) |
| | Buchanan County, Virginia | ) |

NOTICE OF HEARING

HEARING DATE:    July 18, 2006
PLACE:           Southwest Virginia Higher Education Center
                 ABINGDON, VIRGINIA
TIME:            9:00 a.m.

COMMONWEALTH OF VIRGINIA: To all unleased persons owning an interest in the oil, gas and coalbed methane, in and underlying the unit surrounding Well Number VC-535685 as described on Exhibit "A" to the Application, which is attached to this Notice, in Buchanan County, Virginia (hereinafter "Subject Lands") and adjacent lands, and in particular to the following persons, their known and unknown heirs, executors, administrators, devisees, trustees, assigns and successors, both immediate and remote:

See attached Exhibit B.

NOTICE IS HEREBY GIVEN that the Applicant is requesting that the Virginia Gas and Oil Board (hereinafter "Board") issue an order pooling all the rights, interests, and estates of the unleased persons pursuant to Virginia Code Ann. § 45.1-361.1 et seq. in regard to the drilling, development and production of oil, gas and coalbed methane from drilling Unit VC-535685, containing approximately 58.77 acres, located on the above-referenced tracts situated approximately 14,500 feet Northeast of the intersection of Routes 606 and 619 on the waters of Low Gap Branch, and approximately 4.27 miles Northeast of Cannady in the Prater District, Prater Quadrangle, in Buchanan County, Virginia. Applicant requests that the Board issue an order providing as follows:

8:28-cv-01101-BHH    Date Filed 04/07/15    Entry Number 1-2    Page 87 of 115
Case 1:13-cv-00062-JPJ-PMS   Document 176-7   Filed 04/28/14   Page 13 of 41   Pageid#:
1901

a.      Pooling all the interests and estates of the persons named herein and their
known and unknown heirs, executors, administrators, devisees, trustees, assigns
and successors, both immediate and remote, for the drilling, development and
production of oil, gas and coalbed methane from the subject drilling unit for the
Subject Formations underlying and comprised of the Subject Lands;

b.      Establishing a procedure whereby each person named herein shall have
the right to elect (1) to assign or lease his oil, gas and coalbed methane interest
in the subject drilling unit to the designated operator; (2) to enter into a voluntary
agreement with the designated operator to share in the operation (including the
sharing in all reasonable costs of the drilling of the well and development of the
unit) at a rate of payment mutually agreed to by the person making the election
hereunder and the designated operator herein or (3) to share in the operation of
the well as a nonparticipating operator on a carried basis after the proceeds
allocable to such person's share equal the following:

        In the case of a leased tract, 300 percent of the share of the costs allocable
        to such person's interest; or

        In the case of an unleased tract, 200 percent of the share of such costs
        allocable to such person's interest;

c.      Providing that any person named herein who does not make a timely
written election under the terms of the Order to be entered herein shall be deemed
to have leased his oil and gas interest in the subject drilling unit to the operator
designated herein at a rate to be established by the Board;

d.      Designating Applicant, EPC, as Operator; providing that the operator shall have
the right to drill, develop, produce, market and sell oil, gas and coalbed methane
produced from the subject drilling unit; granting the operator the right to market
and sell oil, gas and coalbed methane produced from the subject drilling unit
which is attributable to the conflicting claims and interest pooled herein;
providing that the operator shall have an operator's lien on the oil, gas and coalbed
methane estate and rights owned or claimed by the unleased persons named herein
in the subject drilling unit; and granting the operator the right to drill at any legal
or specially permitted location on the subject drilling unit;

e.      Making any necessary provision for the escrow of funds pursuant to Va. Code
Ann. § 45.1-361.22;

f.      Providing that the order to be entered herein shall expire two (2) years from the
date of its issuance if operations for the development of the subject drilling unit
have not commenced by said date; but further providing that if operations have
commenced during said two year period, then said order shall remain in effect for
so long as operations continue on the subject drilling unit;

g.      Providing that the conduct of operations on any tract in the subject drilling unit shall be deemed to be the conduct of operations on all tracts in the drilling unit; and providing that the production allocated to any tract in the pooled drilling unit shall be in the same proportion as the acreage of that tract bears to the total acreage in the drilling unit; and

h.      Granting such other relief as is merited by the evidence and is just and equitable, whether or not such relief has been specifically requested herein.

NOTICE IS FURTHER GIVEN that this cause has been set for hearing and the taking of evidence before the Board at 9:00 a.m. on July 18, 2006, at the Southwest Virginia Higher Education Center, Abingdon, Virginia and that notice will be published as required by the law and the rules of the Board.

NOTICE IS FURTHER GIVEN that you may attend this hearing, with or without an attorney, and offer evidence or state any comments you have. For further information, contact the Virginia Gas and Oil Board, State Gas and Oil Inspector, Department of Mines, Minerals and Energy, Division of Gas and Oil, P.O. Box 1416, Abingdon, Virginia, 24210, (276) 676-5423 or the Applicant at the address shown below.

DATED this 16th day of June, 2006.

                        Equitable Production Company,
                        1710 Pennsylvania Ave.
                        P.O. Box 2347
                        Charleston, West Virginia 25328


                        James E. Kaiser

                        WILHOIT & KAISER,
                        of Counsel for
                        Equitable Production Company
                        220 Broad Street
                        Kingsport, Tennessee  37660
                        (423) 578-3838

### CERTIFICATE OF SERVICE

I, James E. Kaiser, of counsel for Equitable Production Company, hereby certify that I have on this, the 16th day of June, 2006, caused the foregoing notice and application to the served upon the parties listed herein, at their address, by certified mail, return receipt requested.

Dated this 16th day of June, 2006.

_____
James E. Kaiser
WILHOIT & KAISER

BEFORE THE VIRGINIA GAS AND OIL BOARD

| | | | |
|---|---|---|---|
| Applicant: | Equitable Production Company | ) | |
| | | ) | |
| | | ) | |
| Relief Sought: | Well No. VC-535685 | ) Docket No. | |
| | Force Pooling | ) VGOB-06/07/18-1675 | |
| | | ) | |
| | | ) | |

AFFIDAVIT OF MAILING
(CERTIFICATE OF SERVICE)

| | | |
|---|---|---|
| STATE OF TENNESSEE | ) | |
| | ) | |
| COUNTY OF SULLIVAN | ) | |

James E. Kaiser, of lawful age, being duly sworn, upon oath, deposes and says:

(1)    He is a partner with WILHOIT & KAISER, Agent for Equitable Production Company ("EPC") and makes this affidavit on behalf of EPC.

(2)    Based upon information and belief, the names and last-known addresses, where such addresses are known, of the parties owning an interest in the oil and gas in this cause are set forth and attached hereto.

(3)    On the 16th day of June, 2006, true and correct copies of the Application and the Notice of Hearing in this matter were placed in the United States mail in Kingsport, TN, certified mail, return receipt requested, postage prepaid, duly addressed to the unleased parties at their respective addresses as set forth in the attached Exhibit B which is hereby made a part of this Affidavit.

(4)    Notice of this cause has therefore been served by mail pursuant to the applicable statutes and rules of the Board.

James E. Kaiser

SUBSCRIBED AND SWORN TO before me this 11th day of July, 2006.

Notary Public

My commission expires: 11-12-08

# Certificate of Publication

I, Jenay Tate, Publisher of The Coalfield Progress, a newspaper published twice a week on Tuesdays and Thursdays in the City of Norton, in Wise County, State of Virginia, do hereby certify that the order of publication, copy of which is hereby attached, of

Notice of Hearing .......................... ———— Plaintiff ————

vs.

....................................................

———— Defendant ————

was published for .... 1 .... issues ........ weeks,

beginning. 6-20-06. ending. 6-20-06

Publishers fee, $. 52.25 ...........................

.......... Jenay Tate ...........
                                    Publisher

NOTICE OF HEARING BEFORE THE DEPARTMENT OF MINES MINERALS & ENERGY DIVISION OF GAS AND OIL
Docket Number VGOB-06/07/18-1675
Well Number VC-535685
To: All persons, their known and unknown heirs, executors, administrators, devisees, assigns and successors, owning an interest in the gas, oil, coal or minerals underlying Pine Mountain Oil & Gas, Inc. 2068.22 Acre Tract, Tract 12-42 and adjacent tracks situated approximately 14,500 feet Northeast at the intersection of Routes 606 and 615 on the waters of Lew Gap Branch, and approximately 4.27 miles Northeast of Carriady in the Prater District, Prater Quadrangle, in Buchanan County, Virginia.
NOTICE IS HEREBY GIVEN that Equitable Production Company, 1710 Pennsylvania Ave., P.O. Box 2347, Charleston, West Virginia 25328 is requesting that the Virginia Gas and Oil Board (hereinafter "Board") issue an order pooling all the rights, interests, and estates pursuant to Virginia Code Ann. § 45.1-361.1 et seq. in regard to the drilling, development and production of oil, gas and coalbed methane from drilling Unit VC-535685, containing approximately 56.77 acres, located on the above referenced tracts.
NOTICE IS FURTHER GIVEN that this cause has been set for hearing and the taking of evidence before the Board at 9:00 a.m. on June 18, 2006, at the Southwest Virginia Higher Education Center, Abingdon, Virginia.
All interested persons may attend this hearing, with or without an attorney, and offer evidence or state any comments you have. For further information, contact the Virginia Gas and Oil Board, State Gas and Oil Inspector, Department of Mines, Minerals and Energy, Division of Gas and Oil, P.O. Box 1416, Abingdon, Virginia, 24212, (276) 676-5423 or the Applicant at the address shown above.
TU 49-TI-6

060003846

<table>
<tr><td>INSTRUMENT PREPARED BY<br>VIRGINIA GAS AND OIL BOARD</td><td>ORDER RECORDED UNDER CODE<br>OF VIRGINIA SECTION 45.1-361.26</td></tr>
</table>

V I R G I N I A :

BEFORE THE VIRGINIA GAS AND OIL BOARD

| | | | |
|---|---|---|---|
| APPLICANT: | **Equitable Production Company** | ) | VIRGINIA GAS |
| | | ) | AND OIL BOARD |
| RELIEF SOUGHT: | POOLING OF INTERESTS IN A 58.77 | ) | |
| | ACRE SQUARE DRILLING UNIT | ) | DOCKET NO. |
| | DESCRIBED IN **EXHIBIT A** HERETO | ) | **VGOB-06/07/18-1675** |
| | LOCATED IN THE **NORA** COAL BED GAS | ) | |
| | FIELD AND SERVED BY WELL NO. | ) | |
| | **VC-535685** (herein "Subject Drilling | ) | |
| | Unit") PURSUANT TO VA. CODE | ) | |
| | §§ 45.1-361.21 AND 45.1-361.22, | ) | |
| | FOR THE PRODUCTION OF OCCLUDED | ) | |
| | NATURAL GAS PRODUCED FROM COALBEDS | ) | |
| | AND ROCK STRATA ASSOCIATED | ) | |
| | THEREWITH (herein "Coalbed Methane | ) | |
| | Gas" or "Gas") | ) | |

LEGAL DESCRIPTION:

    SUBJECT DRILLING UNIT SERVED BY WELL NUMBERED
**VC-535685** (herein "Well") TO BE DRILLED IN
THE LOCATION DEPICTED ON **EXHIBIT A** HERETO,
**Pine Mountain Oil & Gas Inc.**
**2068.22 Acre Tract, Tract T2-42**
**Prater QUADRANGLE**
**Prater MAGISTERIAL DISTRICT**
**Buchanan COUNTY, VIRGINIA**
(the "Subject Lands" are more
particularly described on **Exhibit A**,
attached hereto and made a part hereof)

REPORT OF THE BOARD

FINDINGS AND ORDER

    1.   Hearing Date and Place:  This matter came on for hearing before
the Virginia Gas and Oil Board (hereafter "Board") at 9:00 a.m. on **July 18,
2006** Southwest Higher Education Center, Campus of Virginia Highlands
Community College, Abingdon, Virginia.

    2.   Appearances:  **James E. Kaiser of Wilhoit and Kaiser**, appeared for
the Applicant.

    3.   Jurisdiction and Notice:  Pursuant to Va. Code §§45.1-361.1 et
seq., the Board finds that it has jurisdiction over the subject matter.
Based upon the evidence presented by Applicant, the Board also finds that the
Applicant has (1) exercised due diligence in conducting a meaningful search

1

8:28-cv-01101-BHH    Date Filed 04/07/15    Entry Number 1-2    Page 93 of 115
Case 1:13-cv-00062-JPJ-PMS    Document 176-7    Filed 04/28/14    Page 19 of 41    PageId#:
1907

of reasonably available sources to determine the identity and whereabouts of
each gas and oil owner, coal owner, or mineral owner and/or potential owner,
i.e., person identified by Applicant as having ("Owner") or claiming
("Claimant") the rights to Coalbed Methane Gas in all Pennsylvania-aged coals
from the top of the Raven, including all splits to the top of the green and
red shales including, but not limited to Jawbone, Greasy Creek, X-Seam, Poco
6, Poco 4, Poco 3, and any other unnamed coal seams, coalbeds and rock strata
associated therewith (hereafter "Subject Formations") in the Subject Drilling
Unit underlying and comprised of Subject Lands; (2) represented it has given
notice to those parties so identified (hereafter sometimes "person(s)"
whether referring to individuals, corporations, partnerships, associations,
companies, businesses, trusts, joint ventures or other legal entities)
entitled by Va. Code §§ 45.1-361.19 and 45.1-361.22, to notice of the
application filed herein; and (3) that the persons set forth in **Exhibit B-3**
hereto have been identified by Applicant as persons who may be Owners or
Claimants of Coalbed Methane Gas interests in Subject Formations in the
Subject Drilling Unit who have not heretofore agreed to lease or sell to the
Applicant and/or voluntarily pool their Gas interests.    Conflicting Gas
Owners/Claimants in Subject Drilling Unit are listed on **Exhibit E**.    Further,
the Board has caused notice of this hearing to be published as required by
Va. Code § 45.1-361.19.B. Whereupon, the Board hereby finds that the notices
given herein satisfy all statutory requirements, Board rule requirements and
the minimum standards of state due process.

      4.    <u>Amendments</u>: **NONE.**

      5.    <u>Dismissals</u>: **NONE.**

      6.    <u>Relief Requested</u>:    Applicant requests (1) that pursuant to Va.
Code § 45.1-361.22, including the applicable portions of § 45.1-361.21, the
Board pool the rights, interests and estates in and to the Gas in the Subject
Drilling Unit, including those of the Applicant and of the known and unknown
persons named in **Exhibit B-3** hereto and that of their known and unknown
heirs, executors, administrators, devisees, trustees, assigns and successors,
both immediate and remote, for the drilling and operation, including
production, of Coalbed Methane Gas produced from the Subject Drilling Unit
established for the Subject Formations underlying and comprised of the
Subject Lands, (hereafter sometimes collectively identified and referred to
as "well development and/or operation in the Subject Drilling Unit"); and,
(2) that the Board designate **Equitable Production Company** as the Unit
Operator.

      7.    <u>Relief Granted</u>:    The requested relief in this cause shall be and
hereby is granted and: (1) pursuant to Va. Code § 45.1-361.21.C.3,**Equitable
Production Company** (hereafter "Unit Operator" or "Operator") is designated as
the Unit Operator authorized to drill and operate the Well in Subject
Drilling Unit at the location depicted on the plat attached hereto as **Exhibit
A**, subject to the permit provisions contained in Va. Code § 45.1-361.27, <u>et
seq</u>.,; to §§ 4 VAC 25-150 <u>et seq</u>., Gas and Oil Regulations; to § 4 VAC 25-160
<u>et seq</u>., Virginia Gas and Oil Board Regulations and to the Nora Coal Bed Gas
Field Rules established by the Oil and Gas Conservation Board's Order entered
March 26, 1989; all as amended from time to time; and (2) all the interests
and estates in and to the Gas in Subject Drilling Unit, including that of the
Applicant, the Unit Operator and of the known and unknown persons listed on
**Exhibit B-3**, attached hereto and made a part hereof, and their known and

2

2

unknown heirs, executors, administrators, devisees, trustees, assigns and successors, both immediate and remote, be and hereby are pooled in the Subject Formations in the Subject Formation in the Subject Drilling Unit underlying and comprised of the Subject Lands.

Pursuant to the Nora Coal Field Rules promulgated under the authority of Va. Code § 45.1-361.20, the Board has adopted the following method for the calculation of production and revenue and allocation of allowable costs for the production of Coalbed Methane Gas.

For Frac Well Gas. - Gas shall be produced from and allocated to only the 58.77 acre drilling unit in which the well is located according to the undivided interests of each Owner/Claimant within the unit, which undivided interest shall be the ratio (expressed as a percentage) that the amount of mineral acreage within each separate tract that is within the Subject Drilling Unit, when platted on the surface, bears to the total mineral acreage, when platted on the surface, contained within the entire 58.77-acre drilling unit in the manner set forth in the Nora Field Rules.

8.    Election and Election Period: In the event any Owner or Claimant named in **Exhibit B-3** has not reached a voluntary agreement to share in the operation of the Well to be located in Subject Drilling Unit, at a rate of payment mutually agreed to by said Gas Owner or Claimant and the Applicant or the Unit Operator, then such person may elect one of the options set forth in Paragraph 9 below and must give written notice of his election of the option selected under Paragraph 9 herein to the designated Unit Operator at the address shown below within thirty (30) days from the date of receipt of a copy of this Order. A timely election shall be deemed to have been made if, on or before the last day of said 30-day period, such electing person has delivered his written election to the designated Unit Operator at the address shown below or has duly postmarked and placed his written election in first class United States mail, postage prepaid, addressed to the Unit Operator at the address shown below.

9.    Election Options:

9.1    Option 1 - To Participate In The Development and Operation of the Drilling Unit: Any Gas Owner or Claimant named in **Exhibit B-3** who has not reached a voluntary agreement with the Applicant or Unit Operator may elect to participate in the Well development and operation in the Subject Drilling Unit (hereafter "Participating Operator") by agreeing to pay the estimate of such Participating Operator's proportionate part of the actual and reasonable costs, including a reasonable supervision fee, of the Well development and operation in the Subject Drilling Unit, as more particularly set forth in Virginia Gas and Oil Board Regulation 4 VAC 25-160-100 (herein "Completed for Production Costs"). Further, a Participating Operator agrees to pay the estimate of such Participating Operator's proportionate part of the Estimated, Completed-for-Production Costs as set forth below to the Unit Operator within forty-five (45) days from the later of the date of mailing or the date of recording of this Order. The estimated Completed-for-Production Costs for the Subject Drilling Unit are as follows:

3

3

8:28-cv-01101-BHH   Date Filed 04/07/15   Entry Number 1-2   Page 95 of 115
Case 1:13-cv-00062-JPJ-PMS   Document 176-7   Filed 04/28/14   Page 21 of 41   Pageid#:
1909

Completed-for-Production Costs:        **$354,173.00**

Any gas owner and/or claimants named in **Exhibit B-3**, who elect this option (Option 1) understand and agree that their initial payment under this option is for their proportionate share of the Applicant's estimate of actual costs and expenses. It is also understood by all persons electing this option that they are agreeing to pay their proportionate share of the actual costs and expenses as determined by the operator named in this Board Order.

A Participating Operator's proportionate cost hereunder shall be the result obtained by multiplying the Participating Operator's "Interest within Unit" as set forth herein in the attached **Exhibit B-3** times the Estimated Completed-for-Production Costs set forth above. Provided, however, that in the event a Participating Operator elects to participate and fails or refuses to pay the estimate of his proportionate part of the Estimated, Completed-for-Production Costs as set forth above, all within the time set forth herein and in the manner prescribed in Paragraph 8 of this Order, then such Participating Operator shall be deemed to have elected not to participate and to have elected compensation in lieu of participation pursuant to Paragraph 9.2 herein.

9.2    Option 2 - To Receive A Cash Bonus Consideration:  In lieu of participating in the Well development and operation in Subject Drilling Unit under Paragraph 9.1 above, any Gas Owner or Claimant named in **Exhibit B-3** hereto who has not reached a voluntary agreement with the Unit Operator may elect to accept a cash bonus consideration of **$5.00** per net mineral acre owned by such person, commencing upon entry of this Order and continuing annually until commencement of production from Subject Drilling Unit, and thereafter a royalty of 1/8th of 8/8ths [twelve and one-half percent (12.5%)] of the net proceeds received by the Unit Operator for the sale of the Gas produced from any Well development and operation covered by this Order multiplied by that person's Interest Within Unit as set forth in **Exhibit B-3** [for purposes of this Order, net proceeds shall be actual proceeds received less post-production costs incurred downstream of the wellhead, including, but not limited to, gathering, compression, treating, transportation and marketing costs, whether performed by Unit Operator or a third person] as fair, reasonable and equitable compensation to be paid to said Gas Owner or Claimant. The initial cash bonus shall become due and owing when so elected and shall be tendered, paid or escrowed within one hundred twenty (120) days of recording of this Order. Thereafter, annual cash bonuses, if any, shall become due and owing on each anniversary of the date of recording of this order in the event production from Subject Drilling Unit has not theretofore commenced, and once due, shall be tendered, paid or escrowed within sixty (60) days of said anniversary date. Once the initial cash bonus and the annual cash bonuses, if any, are so paid or escrowed, said payment(s) shall be satisfaction in full for the right, interests, and claims of such electing person

4

4

in and to the Gas produced from Subject Formation in the Subject Lands, except, however, for the 1/8th royalties due hereunder.

Subject to a final legal determination of ownership, the election made under this Paragraph 9.2, when so made, shall be satisfaction in full for the right, interests, and claims of such electing person in any well development and operation covered hereby and such electing person shall be deemed to have and hereby does assign its right, interests, and claims in and to the Gas produced from Subject Formation in the Subject Drilling Unit to the Applicant.

9.3.   Option 3 - To Share In The Development And Operation As A Non-Participating Person On A Carried Basis And To Receive Consideration In Lieu Of Cash:  In lieu of participating in the Well development and operation of Subject Drilling Unit under Paragraph 9.1 above and in lieu of receiving a cash bonus consideration under Paragraph 9.2 above, any Gas Owner or Claimant named in **Exhibit B-3** who has not reached a voluntary agreement with the Unit Operator may elect to share in the well development and operation in Subject Drilling Unit on a carried basis (as a "Carried Well Operator") so that the proportionate part of the Completed-for-Production Costs hereby allocable to such Carried Well Operator's interest is charged against such Carried Well Operator's share of production from Subject Drilling Unit.  Such Carried Well Operator's rights, interests, and claims in and to the Gas in Subject Drilling Unit shall be deemed and hereby are assigned to the Unit Operator until the proceeds from the sale of such Carried Well Operator's share of production from Subject Drilling Unit (exclusive of any royalty, excess or overriding royalty, or other non-operating or non cost-bearing burden reserved in any lease, assignment thereof or agreement relating thereto covering such interest) equals three hundred percent (300%) for a leased interest or two hundred percent (200%) for an unleased interest (whichever is applicable) of such Carried Well Operator's share of the Completed-for-Production Costs allocable to the interest of such Carried Well Operator. Any Gas Owner and/or Claimant named in **Exhibit B-3** who elects this option (Option 3) understands and agrees that Completed-for-Production Costs are the Operator's actual costs for well development and operation.  When the Unit Operator recoups and recovers from such Carried Well Operator's assigned interest the amounts provided for above, then, the assigned interest of such Carried Well Operator shall automatically revert back to such Carried Well Operator, and from and after such reversion, such Carried Well Operator shall be treated as if it had participated initially under Paragraph 9.1 above; and thereafter, such participating person shall be charged with and shall pay his proportionate part of all further costs of such well development and operation.

Subject to a final legal determination of ownership, the election made under this Paragraph 9.3, when so made, shall be satisfaction in full for the right, interests, and claims of such

5

5

8:28-cv-01101-BHH    Date Filed 04/07/15    Entry Number 1-2    Page 97 of 115
Case 1:13-cv-00062-JPJ-PMS    Document 176-7    Filed 04/28/14    Page 23 of 41    PageId#:
1911

electing person in any Well development and operation covered
hereby and such electing person shall be deemed to have and
hereby does assign his right, interests, and claims in and to the
Gas produced from Subject Formation in the Subject Drilling Unit
to the Applicant for the period of time during which its interest
is carried as above provided prior to its reversion back to such
electing person.

10.  <u>Failure to Properly Elect</u>:  In the event a person named in
**Exhibit B-3** hereto has not reached a voluntary agreement with the
Applicant or Unit Operator and fails to elect within the time, in
the manner, and in accordance with the terms of this Order, one of
the alternatives set forth in Paragraph 9 above for which his
interest qualifies, then such person shall be deemed to have elected
not to participate in the proposed Well development and operation in
Subject Drilling Unit and shall be deemed, subject to any final
legal determination of ownership, to have elected to accept as
satisfaction in full for such person's right, interests, and claims
in and to the Gas the consideration provided in Paragraph 9.2 above
for which its interest qualifies, and shall be deemed to have leased
and/or assigned his right, interests, and claims in and to said Gas
produced from Subject Formation in Subject Drilling Unit to the Unit
Operator.  Persons who fail to properly elect shall be deemed to
have accepted the compensation and terms set forth herein at
Paragraph 9.2 in satisfaction in full for the right, interests, and
claims of such person in and to the Gas produced from Subject
Formation underlying Subject Lands.

11.  <u>Default By Participating Person</u>:  In the event a person named in
**Exhibit B-3** elects to participate under Paragraph 9.1, but fails or refuses
to pay, to secure the payment or to make an arrangement with the Unit
Operator for the payment of such person's proportionate part of the estimated
Completed-for-Production costs as set forth herein, all within the time and
in the manner as prescribed in this Order, then such person shall be deemed
to have withdrawn his election to participate and shall be deemed to have
elected to accept as satisfaction in full for such person's right, interests,
and claims in and to the Gas the consideration provided in Paragraph 9.2
above for which his interest qualifies depending on the excess burdens
attached to such interest.  Whereupon, any cash bonus consideration due as a
result of such deemed election shall be tendered, paid or escrowed by Unit
Operator within one hundred twenty (120) days after the last day on which
such defaulting person under this Order should have paid his proportionate
part of such cost or should have made satisfactory arrangements for the
payment thereof.  When such cash bonus consideration is paid or escrowed, it
shall be satisfaction in full for the right, interests, and claims of such
person in and to the Gas underlying Subject Drilling Unit in the Subject
Lands covered hereby, except, however, for any 1/8th royalties which would
become due pursuant to Paragraph 9.2 hereof.

12.  <u>Assignment of Interest</u>:  In the event a person named in **Exhibit
B-3** is unable to reach a voluntary agreement to share in the Well
development and operation in Subject Drilling Unit at a rate of payment

6

agreed to mutually by said Gas Owner or Claimant and the Unit Operator, and said person elects or fails to elect to do other than participate under Paragraph 9.1 above in the Well development and operation in Subject Drilling Unit, then such person shall be deemed to have and shall have assigned unto Unit Operator such person's right, interests, and claims in and to said Well, in Subject Formations in Subject Drilling Unit, and other share in and to Gas production to which such person may be entitled by reason of any election or deemed election hereunder in accordance with the provisions of this Order governing said elections.

13.   Unit Operator (or Operator):   **Equitable Production Company** shall be and hereby is designated as Unit Operator authorized to drill and operate the Well(s) in Subject Formations in Subject Drilling Unit, all subject to the permit provisions contained in Va. Code §§ 45.1-361.27 et seq.; §§ 4 VAC 25-150 et seq., Gas and Oil Regulations; §§ 4 VAC 25-160 et seq., Virginia Gas and Oil Board Regulations; Oil and Gas Conservation Board ("OGCB") Order establishing the Nora Coal Bed Gas Field Rules entered March 26, 1989; all as amended from time to time, and all elections required by this Order shall be communicated to Unit Operator in writing at the address shown below:

> **Equitable Production Company**
> **1710 Pennsylvania Avenue**
> **Charleston, WV 25302**
> **Phone: (304) 348-3800**
> **Fax:   (304) 344-0363**
> **Attn: Leslie Smith**

14.   Commencement of Operations:   Unit Operator shall commence or cause to commence operations for the drilling of the Well within Subject Drilling Unit within seven hundred thirty (730) days from the date of this Order, and shall prosecute the same with due diligence. If the Unit Operator has not so commenced and/or prosecuted, then this order shall terminate, except for any cash sums then payable hereunder; otherwise, unless sooner terminated by Order of the Board, this Order shall expire at 12:00 p.m. on the date on which the well covered by this Order is permanently abandoned and plugged.   However, in the even at an appeal is taken from this Order, then the time between the filing of the Petition for Appeal and the Final Order of the Circuit Court shall be excluded in calculating the two-year period referenced herein.

15.   Operator's Lien:   Unit Operator, in addition to the other rights afforded hereunder, shall have a lien and a right of set off on the Gas estates, rights, and interests owned by any person subject hereto who elects to participate under Paragraph 9.1 in the Subject Drilling Unit to the extent that costs incurred in the drilling or operation on the Subject Drilling Unit are a charge against such person's interest.   Such liens and right of set off shall be separable as to each separate person and shall remain liens until the Unit Operator drilling or operating the Well(s) has been paid the full amounts due under the terms of this Order.

16.   Escrow Provisions:

The Applicant represented to the Board that there **are** unknown or

unlocatable claimants in Subject Drilling Unit whose payments are subject to the provisions of Paragraph 16.1 hereof in the Subject Drilling Unit; and, the Unit Operator has represented to the Board that there **are** conflicting claimants in the Subject Drilling Unit whose payments are subject to the provisions of Paragraph 16.2 hereof. Therefore, by this Order, the Escrow Agent named herein or any successor named by the Board, **is** required to establish an interest-bearing escrow account for the Subject Drilling Unit (herein "Escrow Account"), and to receive and account to the Board pursuant to its agreement for the escrowed funds hereafter described in Paragraphs 16.1 and 16.2:

> Wachovia Bank, N. A.
> VA7518
> P. O. Box 14061
> Roanoke, VA 24038

16.1. <u>Escrow Provisions For Unknown or Unlocatable Persons</u>:  If any payment of bonus, royalty payment or other payment due and owing under this Order cannot be made because the person entitled thereto cannot be located or is unknown, then such cash bonus, royalty payment, or other payment shall not be commingled with any funds of the Unit Operator and, pursuant to Va. Code § 45.1-361.21.D, said sums shall be deposited by the Unit Operator into the Escrow Account, commencing within one hundred twenty (120) days of recording of this Order, and continuing thereafter on a monthly basis with each deposit to be made, by use of a report format approved by the Inspector, by a date which is no later than sixty (60) days after the last day of the month being reported and/or for which funds are being deposited. Such funds shall be held for the exclusive use of, and sole benefit of the person entitled thereto until such funds can be paid to such person(s) or until the Escrow Agent relinquishes such funds as required by law or pursuant to Order of the Board in accordance with Va. Code § 45.1-361.21.D.

16.2 <u>Escrow Provisions For Conflicting Claimants</u>:  If any payment of bonus, royalty payment, proceeds in excess of ongoing operational expenses, or other payment due and owing under this Order cannot be made because the person entitled thereto cannot be made certain due to conflicting claims of ownership and/or a defect or cloud on the title, then such cash bonus, royalty payment, proceeds in excess of ongoing operational expenses, or other payment, together with Participating Operator's Proportionate Costs paid to Unit Operator pursuant to Paragraph 9.1 hereof, if any, (1) shall not be commingled with any funds of the Unit Operator; and (2) shall, pursuant to Va. Code §§ 45.1-361.22.A.2, 45.1-361.22.A.3 and 45.1-361.22.A.4, be deposited by the Operator into the Escrow Account within one hundred twenty (120) days of recording of this Order, and continuing thereafter on a monthly basis with each deposit to be made by a date which is no later than sixty (60) days after the last day of the month being reported and/or for which funds are subject to deposit. Such funds shall be held for the exclusive use of, and sole benefit of, the person entitled thereto until such funds can be paid to such person(s) or until the Escrow Agent relinquishes such funds as required by law or pursuant to Order of the Board.

17.    <u>Special Findings</u>: The Board specifically and specially finds:

17.1. Applicant is **Equitable Production Company**. Applicant is duly authorized and qualified to transact business in the Commonwealth of Virginia;

17.2. Applicant **Equitable Production Company** has made a delegation of authority to **Equitable Production Company** to explore, develop and maintain the properties and assets of Applicant, now owned or hereafter acquired, and **Equitable Production Company** has accepted this delegation of authority and agreed to explore, develop and maintain those properties and assets, and has consented to serve as Coalbed Methane Gas Unit Operator for Subject Drilling Unit and to faithfully discharge the duties imposed upon it as Unit Operator by statute and regulations;

17.3. Applicant **Equitable Production Company** is an operator in the Commonwealth of Virginia, and has satisfied the Board's requirements for operations in Virginia;

17.4 Applicant **Equitable Production Company** claims ownership of gas leases, Coalbed Methane Gas leases, and/or coal leases representing **0.00%** percent of the oil and gas interest/claims in and to Coalbed Methane Gas and **100%** percent of the coal interest/claims in and to Coalbed Methane Gas in Subject Drilling Unit; and, Applicant claims the right to explore for, develop and produce Coalbed Methane Gas from Subject Formations in Subject Drilling Unit in **Buchanan** County, Virginia, which Subject Lands are more particularly described in **Exhibit A**;

17.5. The estimated total production from Subject Drilling Unit is **230 MMCG**. The estimated amount of reserves from the Subject Drilling Unit is **230 MMCG**;

17.6 Set forth in **Exhibit B-3**, is the name and last known address of each Owner or Claimant identified by the Applicant as having or claiming an interest in the Coalbed Methane Gas in Subject Formation in Subject Drilling Unit underlying and comprised of Subject Lands, who has not, in writing, leased to the Applicant or the Unit Operator or agreed to voluntarily pool his interests in Subject Drilling Unit for its development. The interests of the Respondents listed in **Exhibit B-3** comprise **100%** percent of the oil and gas interests/claims in and to Coalbed Methane Gas and **0.00%** percent of the coal interests/claims in and to Coalbed Methane Gas in Subject Drilling Unit;

17.7 Applicant's evidence established that the fair, reasonable and equitable compensation to be paid to any person in lieu of the right to participate in the Wells are those options provided in Paragraph 9 above;

17.8 The relief requested and granted is just and reasonable, is supported by substantial evidence and will afford each person

9

9

listed and named in **Exhibit B-3** hereto the opportunity to recover or receive, without unnecessary expense, such person's just and fair share of the production from Subject Drilling Unit. The granting of the Application and relief requested therein will ensure to the extent possible the greatest ultimate recovery of Coalbed Methane Gas, prevent or assist in preventing the various types of waste prohibited by statute and protect or assist in protecting the correlative rights of all persons in the subject common sources of supply in the Subject Lands. Therefore, the Board is entering an Order granting the relief herein set forth.

18.    <u>Mailing Of Order And Filing Of Affidavit</u>:  Applicant or its Attorney shall file an affidavit with the Secretary of the Board within sixty (60) days after the date of recording of this Order stating that a true and correct copy of said Order was mailed within seven (7) days from the date of its receipt by Unit Operator to each Respondent named in **Exhibit B-3** pooled by this Order and whose address is known.

19.    <u>Availability of Unit Records</u>:  The Director shall provide all persons not subject to a lease with reasonable access to all records for Subject Drilling Unit which is submitted by the Unit Operator to said Director and/or his Inspector(s).

20.    <u>Conclusion</u>: Therefore, the requested relief and all terms and provisions set forth above be and hereby are granted and IT IS SO ORDERED.

21.    <u>Appeals</u>: Appeals of this Order are governed by the provisions of Va. Code Ann. § 45.1-361.9 which provides that any order or decision of the Board may be appealed to the appropriate circuit court.

22.    <u>Effective Date</u>: This Order shall be effective as of the date of the Board's approval of this Application, which is set forth at Paragraph 1 above.


DONE AND EXECUTED this *15th* day of *November*, **2006**, by a majority of the Virginia Gas and Oil Board.

Chairman, Benny R. Wampler


DONE AND PERFORMED this *15th* day of *November*, **2006**, by Order of this Board.

B. R. Wilson
Principal Executive To The Staff
Virginia Gas and Oil Board

10

8:28-cv-01101-BHH    Date Filed 04/07/15    Entry Number 1-2    Page 102 of 115
Case 1:13-cv-00062-JPJ-PMS    Document 176-7    Filed 04/28/14    Page 28 of 41    Pageid#:
1916

STATE OF VIRGINIA          )
COUNTY OF WASHINGTON       )

    Acknowledged on this 15th day of November,2006, personally before
me, a notary public in and for the Commonwealth of Virginia, appeared
Benny R. Wampler ,being duly sworn did depose and say that he is
Chairman of the Virginia Gas and Oil Board, and B. R. Wilson, being
duly sworn did depose and say that he is Principal Executive to the
Staff of the Virginia Gas and Oil Board, that they executed the same
and were authorized to do so.

Daine J. Davis
Notary Public


My commission expires: 9/30/09

**11**



**TOTAL UNIT AREA = 58.77 ACRES**

LATITUDE 37° 12' 30"

LONGITUDE 82° 10' 00"

1875'

1600'

N

VA 27

PP-1 (I.P.)    PP-2 (I.P.)

N 67° 32' 32" W
138.89'

S 70° 53' 36" E
198.44'

Proposed VC-535685

PROPOSED CCC COORDINATES OF WELL VC-535685
N  28390.37
E  61348.83

PROPOSED LAT. & LONG. (NAD 27 DECIMAL DEGREES) OF WELL VC-535685
37.177922
82.173099

11073'

LEASE NO. 241640L / T2-42
A.B. Nichols, et al.
2068.22 ACRES
HEARTWOOD FORESTLAND FUND IV, L.P. - Surface
DICKENSON—RUSSELL COAL CO., LLC /
ALPHA LAND & RESERVES, LLC / ACIN, LLC /
WBRD, LLC - coal
PINE MOUNTAIN OIL & GAS, INC. - oil & cbm
GALLIE FRIEND, TRUSTEE OF THE ESTATE OF
YELLOW POPLAR LUMBER COMPANY - gas (unleased)
GAS  58.77 AC.    100%

Low Gap Branch

300'

**UNIT BOUNDARY**

COMMONWEALTH OF VIRGINIA
PHILLIP M. SEALS
No. 1570
5-26-06
LAND SURVEYOR

NOTE:

PROPERTY INFORMATION PROVIDED BY EQUITABLE PRODUCTION COMPANY.

ELEVATIONS WERE DETERMINED BY GPS & TRIGONOMETRIC METHODS BASED ON BENCH MARK P-424.

## WELL LOCATION PLAT

COMPANY  EQUITABLE PRODUCTION CO.                    WELL NAME OR NUMBER  VC-535685

TRACT NO.  T2-42                                     QUADRANGLE  Prater

DISTRICT  Prater

WELL COORDINATES (VIRGINA STATE PLANE 27)  N 328,313.32  E 930,136.80

ELEVATION  2082.99    METHOD USED TO DETERMINE ELEVATION:  GPS & TRIG.

COUNTY  Buchanan    SCALE:  1" = 400'    DATE  5-26-06

THIS PLAT IS A NEW PLAT  X ; AN UPDATED PLAT _____ ; OR A FINAL LOCATION PLAT _____

+ DENOTES THE LOCATION OF A WELL ON UNITED STATES TOPOGRAPHIC MAPS, SCALE 1 TO 24,000, LATITUDE AND LONGITUDE LINES BEING REPRESENTED BY BORDER LINES AS SHOWN.

690.57
Form DGO-GO-7
Rev. 1-98

LICENSED LAND SURVEYOR                               (AFFIX SEAL)

12

## EXHIBIT "B-3"
## VC-535685

| TRACT | LESSOR | LEASE STATUS | INTEREST WITHIN UNIT | GROSS ACREAGE IN UNIT |
|-------|--------|--------------|----------------------|-----------------------|
| | | **Gas Estate Only** | | |
| 1 | Gallie Friend, Trustee of the Estate of Yellow Poplar Lumber Company Unknown | Unleased | 100.000000% | 58.7700 |
| | **TOTAL UNLEASED** | | 100.000000% | 58.7700 |

13

8:28-cv-01101-BHH    Date Filed 04/07/15    Entry Number 1-2    Page 105 of 115
Case 1:13-cv-00062-JPJ-PMS    Document 176-7    Filed 04/28/14    Page 31 of 41    Pageid#:
1919

## EXHIBIT "E"
## VC-535685

| TR | LESSOR | LEASE STATUS | INTEREST WITHIN UNIT | GROSS ACREAGE IN UNIT |
|----|--------|--------------|----------------------|------------------------|
| | | **Gas Estate Only** | | |
| 1 | Gallie Friend, Trustee of the Estate of Yellow Poplar Lumber Company Unknown | Unleased | 100.000000% | 58.7700 |
| | | **Coal Estate Only** | | |
| 1 | Pine Mountain Oil & Gas, Inc. ATTN: Jerry Grantham P.O. Box 2136 Abingdon, VA 24212 | Leased 241640L T2-42 | 100.000000% | 58.7700 |

#06-3846

VIRGINIA:    In the Clerk's Office of the Circuit Court of Buchanan County. The foregoing instrument was this day presented in the office aforesaid and is, together with the certificate of acknowledgment annexed, admitted to record this _19th_ day of _November_, 20_06_ _1:45_. M. Deed Book No. _____ and Page No. _____.    TESTE:    James M. Bevins, Jr., Clerk Returned to: _DMME_.    TESTE _____ Deputy Clerk

14



ENTERED

By
9/24

INSTRUMENT #060003846
RECORDED IN THE CLERK'S OFFICE OF
BUCHANAN COUNTY ON
NOVEMBER 17, 2006 AT 01:45PM
JAMES M. BEVINS, CLERK

RECORDED BY: AKT

*1139*

070001672

| INSTRUMENT PREPARED BY VIRGINIA GAS AND OIL BOARD | | ORDER RECORDED UNDER CODE OF VIRGINIA SECTION 45.1-361.26 |

VIRGINIA:

BEFORE THE VIRGINIA GAS AND OIL BOARD

SUPPLEMENTAL ORDER REGARDING          DOCKET NO. VGOB 06/07/18-1675

ELECTIONS, UNIT: VC-535685

(hereinafter "Subject Drilling Unit").

REPORT OF BOARD

FINDINGS AND ORDER

1. This Supplemental Order is entered by the Board sua sponte in the form authorized by the Board at its hearing held at 9:00 a.m. on October 20, 1992, Board of Supervisors Room, Courthouse, Grundy, Virginia, and pursuant to authority granted to the Board's Chairman at the hearing of the Virginia Gas and Oil Board on June 16, 1992, at 9:00 a.m. at the Rhododendron Restaurant at the Breaks Interstate Park, Breaks, Virginia; and this Supplemental Order is being recorded for the purpose of (1) complying with the requirement of the Virginia Gas and Oil Board Regulations, 4 VAC 25-160.70C by supplementing the Order previously issued by the Board for subject Docket on November 15, 2006 and recorded in Instrument # 060003846 in the Office of the Clerk of Circuit Court, Buchanan County, Virginia on November 17, 2006, (herein "Board Order") to complete the record regarding elections. The Board Order pooled all interest in Subject Drilling Unit including those of the Respondents more particularly set forth and identified by the Designated Operator in the affidavits attached hereto and made a part hereof. The Board finds it has jurisdiction over the subject matter pursuant to the provisions of the Virginia Gas and Oil Act, § 45.1-361.1 et seq., Virginia Code, 1950 as amended.

2. Findings: The Board finds that:

   (a) The Board Order directed Equitable Production Company, (herein the Designated Operator"), to mail copies of the Board Order to all respondents whose interest, if any, were pooled by said Board Order;

   (b) The designated operator filed its affidavit of mailing dated December 12, 2006, disclosing that it had mailed a correct copy of the Board's Order to all Respondents whose interest, if any, were pooled by said Board Order;

   (c) The Board Order required each Respondent whose interest, if any, were pooled by the terms of said Board Order to make his or her election within thirty (30) days after the date of mailing or recording, as applicable, of said Order; the

1

Designated Operator has filed its affidavit dated January 8, 2007, in accordance with § 7.C of the Virginia Gas and Oil Board Regulations and 4 VAC 25-160.70C (herein "Affidavit of Election"), wherein it has, for each Respondent whose interest, if any, were pooled by said Board Order, stated: (i) whether each Respondent has made or failed to make a timely election; (ii) the nature of the election made, if any; (iii) whether, by reason of a failure to elect or to timely elect one or more Respondents are deemed, under the terms of the Board's Order, to have leased all their rights, title, interest, estates and claims in Subject Drilling Unit to the Designated Operator;

(d)    The Board Order further required the Designated Operator, after expiration of the election period, to file with the Board a statement of the interests subject to escrow under the terms and provisions of the Board Order, in light of the elections made or deemed to have been made (herein "Statement of Interests"); that the Designated Operator furnished said Statement of Interests as part of its Affidavit of Election. A copy of which is attached hereto as Exhibit B;

(e)    Current Board standards requiring the escrow of funds and the Board's agreement with its Escrow Agent, Wachovia Bank, N. A., VA7515, P.O. Box 14061, Roanoke, VA 24038, (888) 396-0853, Attn: Judy Barger, or any successor named by the Board, require the entry of a Supplemental Order establishing of record the elections made or deemed to have been made and specifying the sums or percentage thereof subject to escrow. Current Board escrow standards were made applicable to Subject Drilling Unit by a Board Order dated December 23, 1992.

3.    Order: By this Order, the Board orders the Designated Operator to tender, consistent with and in accordance with the findings set forth at paragraph 2 above and the annexed Affidavits, any funds subject to escrow and instructs the Escrow Agent, Wachovia Bank N. A., VA7515, P.O. Box 14061, Roanoke, VA 24038, (888) 396-0853, Attn: Judy Barger, or any successor named by the Board to establish interest-bearing escrow account(s), IRS Tax Identification Number 54-1629506, in accordance with the information set forth in said affidavits to receive such funds and account to the Board therefore.

4.    Mailing of Order and Filing of Affidavit: The Designated Operator under the captioned Order or its Attorney shall file an affidavit with the Secretary of the Board within ten (10) days after the date of receipt of this Order stating that a true and correct copy of this Order was mailed to each person whose interest or claim is subject to escrow and whose address is known.

5.    Conclusion: Therefore, the findings and all terms and provisions set forth above be and hereby are granted and IT IS SO ORDERED.

6.    Effective Date: This Order shall be effective on the date of its execution.

02

8:28-cv-01101-BHH    Date Filed 04/07/15    Entry Number 1-2    Page 109 of 115
Case 1:13-cv-00062-JPJ-PMS    Document 176-7    Filed 04/28/14    Page 35 of 41    Pageid#:
1923

DONE AND EXECUTED this __16th__ day of _January_____, 2007 by a majority of the Virginia Gas and Oil Board.

Chairman, Benny R. Wampler


DONE AND PERFORMED THIS __2-2__ day of _February_____, 2007 by Order of this Board.

B. R. Wilson
Principal Executive to the Staff
Virginia Gas and Oil Board

03

STATE OF VIRGINIA                    )
COUNTY OF *Washington*

Acknowledged on this *16th* day of *January*, 2007, personally before me a notary public in and for the Commonwealth of Virginia, appeared Benny R. Wampler, being duly sworn did depose and say that he is Chairman of the Virginia Gas and Oil Board, that he executed the same and was authorized to do so.

*Diane J. Davis*

Notary Public

My commission expires: *9-30-09* .

STATE OF VIRGINIA                    )
COUNTY OF *Washington*

Acknowledged on this *22nd* day of *February*, 2007, personally before me a notary public in and for the Commonwealth of Virginia, appeared B. R. Wilson, being duly sworn did depose and say that he is Principal Executive to the Staff Virginia Gas and Oil Board, that he executed the same and was authorized to do so.

*Diane J. Davis*

Diane J. Davis
Notary Public

My commission expires: *9-30-09* .

04

**VIRGINIA:**

***BEFORE THE VIRGINIA GAS AND OIL BOARD***

IN RE: Application of Equitable Production Company, for Forced Pooling of Interests in Unit Number VC-535685 VGOB Docket No. VGOB-06/07/18-1675 in the Prater Magisterial District of Buchanan County, Virginia.

AFFIDAVIT OF WILHOIT & KAISER, Attorneys-at-Law, Agents for the Designated Operator REGARDING ELECTIONS, ESCROW ACCOUNTS AND SUPPLEMENTAL ORDER

James E. Kaiser (herein Affiant), being first duly sworn on oath, deposes and says:

1. That the Affiant is an attorney in the law firm of WILHOIT & KAISER, the Agent for the Designated Operator, with offices located at 220 Broad Street, Kingsport, Tennessee 37660, and is authorized to give this Affidavit in its behalf;

2. That the Order entered on November 15, 2006, by the Virginia Gas and Oil Board regarding the captioned coalbed methane Unit required the Applicant to mail a true and correct copy of said Order to each person pooled by said Order;

3. That within seven (7) days of the receipt of an executed copy of the Order referred to at Paragraph 2. above, the Affiant was directed to cause a true and correct copy of said Order to be mailed via the United States Postal Service to each Respondent named in the captioned Application, whose address was known, and to all persons, if any, who are added as Respondents at the hearing held in the captioned matter;

4. That the Order of the Virginia Gas and Oil Board in the captioned matter required all persons pooled thereby to tender their written elections to the Unit Operator within thirty (30) days of the date said Order was recorded in the county above named; that said Order was recorded on November 17, 2006.

5. That the Designated Operator, by and through their agent, Wilhoit & Kaiser, Attorneys-at-Law, have established procedures to review all mail received and all written documents received by means other than by mail to ascertain whether parties whose interest have been pooled have made a written election, in a timely fashion, as required by the captioned Order; that said procedures were followed to identify the elections, if any, made with regard to Subject Unit; that the following persons delivered, by mail or otherwise, written elections to the Unit Operator, within the thirty day election periods:

    NONE

1

05

8:28-cv-01101-BHH    Date Filed 04/07/15    Entry Number 1-2    Page 112 of 115
Case 1:13-cv-00062-JPJ-PMS    Document 176-7    Filed 04/28/14    Page 38 of 41    Pageid#:
1926

6.  That the interest and/or claims of the following persons (who made timely elections, or who are deemed under the terms of the Board's Order to have leased, or who, subsequent to the pooling hearing held in the captioned matter, have leased or otherwise entered into an agreement with the Designated Operator) are subject to escrow as either unknown claiments or conflicting claiments under the Board's Order pooling the captioned Unit, Board Regulations and the Code of Virginia; that opposite the name of each person named as a Respondent listed below is set forth:

| TRACT | LESSOR | LEASE STATUS | NET REVENUE INTEREST |
|-------|--------|--------------|----------------------|
| 1 | Yellow Poplar Lumber Company Unknown | Unleased | 0.12500000 |
| OR 1 | Pine Mountain Oil & Gas, Inc. Attn: Jerry Grantham P.O. Box 2136 Abingdon, VA 24212 | Leased-EPC 241640L T2-42 | 0.12500000 |

7.  That after the pooling hearing held in the captioned matter, the following persons have leased or entered into a voluntary agreement with the Designated Operator with regard to their interest and/or claims.

    NONE

8.  That the following persons have not made a timely election and have failed to enter into an agreement with the Designated Operator and their respective interests shall be deemed to have leased pursuant to and in accordance with paragraph 10 of the Order.

| Tract | Lessor | Cash Consideration |
|-------|--------|--------------------|
| 1 | Yellow Poplar Lumber Company Unknown | 58.7700 X $5.00 = $293.85 |

06

That pursuant to the provision of 4VAC 25-160.70C annexed hereto and incorporated herein is a proposed supplemental order to be entered to complete the record regarding elections; that said annexed supplemental order sets forth that the services of the Escrow Agent are required in this matter pursuant to the terms of §§ 45.1-361.21.D.

Dated at Kingsport, Tennessee, this _____ day of _____ 2007.

_____
Affiant

Taken, subscribed and sworn to before me by James E. Kaiser, the Agent of Equitable Production Company, a corporation, on behalf of the corporation, this _____ day of _____ 2007.

My commission expires: _11-12-08_

_____
Notary

3

07

8:28-cv-01101-BHH     Date Filed 04/07/15     Entry Number 1-2     Page 114 of 115
Case 1:13-cv-00062-JPJ-PMS     Document 176-7     Filed 04/28/14     Page 40 of 41     Pageid#:
1928

# EXHIBIT "B"
## VC-535685
## VGOB 06/07/18-1675

| TRACT | LESSOR | LEASE STATUS | INTEREST WITHIN UNIT | GROSS ACREAGE IN UNIT |
|---|---|---|---|---|
| | | **Gas Estate Only** | | |
| 1 | Gallie Friend, Trustee of the Estate of Yellow Poplar Lumber Company Unknown | Unleased | 100.000000% | 58.7700 |
| | Equitable Production | | | |
| **Tract 1 Totals** | | | **100.000000%** | **58.7700** |
| | **TOTAL GAS ESTATE** | | **100.000000%** | **58.7700** |
| | | **Coal Estate Only** | | |
| 1 | Pine Mountain Oil & Gas, Inc. ATTN: Jerry Grantham P.O. Box 2136 Abingdon, VA. 24212 | Leased 241640L T2-42 | 100.000000% | 58.7700 |
| | Equitable Production | | | |
| **Tract 1 Totals** | | | **100.000000%** | **58.7700** |
| | **TOTAL COAL ESTATE** | | **100.000000%** | **58.7700** |

VIRGINIA:     In the Clerk's Office of the Circuit Court of Buchanan County. The foregoing instrument was this day presented in the office aforesaid and is, together with the certificate of ackowledgement annexed, admitted to record this _30th_ day of _April_,
20 _07_. Instrument No. _07000167 2_                    TESTE: Beverly S. Tiller, Clerk
Returned to: _DMME_                    TESTE: _Beverly S. Tiller_          Deputy Clerk

08

ENTERED

81
$9
BV

INSTRUMENT #070DD1672
RECORDED IN THE CLERK'S OFFICE OF
BUCHANAN COUNTY ON
APRIL 30, 2007 AT 12:13PM
BEVERLY S. TILLER, CLERK

RECORDED BY: TLB